**BANK OF MONTREAL, Plaintiff,**

v.

**EAGLE ASSOCIATES, Howard R. Schuster, and Robert R. Bolding, Defendants.**

**No. 86 CIV. 6760 (PKL).**

United States District Court, S.D. New York.

Nov. 30, 1987.

Lunney & Crocco, New York City (Charles A. Crocco, Jr., Phillip C. Landrigan, of counsel), for plaintiff.

Spengler, Carlson, Gubar, Brodsky & Frischling, New York City (Robert J.A. Zito, of counsel), for defendant.

Hawkins, Delafield & Wood, New York City (Thomas W. Pippert, of counsel), for Mitsui Manufacturers Bank.

## OPINION and ORDER

LEISURE, District Judge:

This is a diversity action arising out of three promissory notes ("Eagle Notes") executed by defendants Howard R. Schuster ("Schuster") and Robert R. Bolding ("Bolding") as sole general partners of Eagle Associates ("Eagle"). Pursuant to these notes, defendants agreed to pay plaintiff, Bank of Montreal (the "Bank"), the amount of $2,017,250 on May 15, 1984. Plaintiff now brings this action to collect a remaining balance of $150,000, plus interest due and owing on said notes. Plaintiff also seeks all costs and expenses arising out of efforts to enforce these notes including, without limitation, the reasonable fees and out-of-pocket expenses incurred by counsel for the Bank.

Defendants have moved pursuant to Rule 42 of the Federal Rules of Civil Procedure to consolidate the instant action with *Bank of Montreal v. Mitsui Manufacturers Bank, Burton Rayden and Jeffrey Rayden,* 85 Civ. 1519 (the "Rayden Action"), a related claim filed by plaintiff and currently pending before Hon. John F. Keenan, District Court Judge of this Court. In the alternative, defendants have requested leave of Court to file a third-party complaint against the Raydens and Mitsui. For the reasons set forth below, defendants' motion to consolidate is hereby granted.

### Factual Background

Eagle is a New York-based limited partnership organized for the purpose of acquiring, owning and promoting the distribution of the motion picture "Gorky Park." Schuster and Bolding are the sole general partners of Eagle. Commencing in or about November of 1983, Eagle sold its limited partnership interests to various investors pursuant to a private placement memorandum. Each Eagle limited partner purchased his respective interest either by paying cash for his investment or by providing Eagle with a promissory note ("Investor Note"), secured by an irrevocable letter of credit. Affidavit of Robert J.A. Zito, Esq., sworn to on February 13, 1987, at ¶¶ 1–4. (hereinafter "Zito Aff.").

In order to pursue its promotion efforts, Eagle sought and obtained financing from the plaintiff, in the form of three promissory notes ("Eagle Notes"). As a condition of securing such financing, the Bank required Eagle to execute two agreements: 1) a Note Discount Agreement ("Note Agreement") dated December 15, 1983, and 2) a Pledge Agreement ("Pledge Agreement") dated January 5, 1984. The Note Agreement conditioned purchase of the Eagle Notes at a discount upon delivery of all Investor Notes and Investor Letters of Credit to the Bank in an amount corresponding to the investor purchase price. The Bank further conditioned purchase of the Eagle Notes on the promise that Eagle pledge, assign and endorse to the Bank a security interest in all such Investor Notes and letters of credit. Zito Aff. ¶¶ at 5–6.

Consistent with the terms of the Note Agreement, payment pursuant to the Investor Notes was to be made directly to the Bank. Eagle thus surrendered its right to be named as beneficiary of the investor letters of credit in favor of the Bank. Correlatively, Eagle granted to plaintiff the exclusive right to collect all monies due and owing under the Investor Notes. The Note Agreement also stipulated that Investor Notes be issued in a specific form drafted by the Bank and that they be issued by a bank acceptable to the plaintiff.

The Eagle Notes were executed on January 5, 20, and February 10, 1984, respectively, and totalled $2,017,250 plus interest. This amount was to be paid to plaintiff on May 15, 1984. Pursuant to section 7.06 of the Note Agreement, defendant Eagle also agreed to pay on demand all costs and expenses including, without limitation, the reasonable fees and out-of-pocket expenses of counsel for the Bank in connection with the enforcement of the Notes.

Investors Burton Rayden and Jeffrey Rayden (collectively "the Raydens") jointly owned a limited partnership interest in Eagle. In consideration of their joint purchase, the Raydens provided Eagle with an Investor Note (the "Rayden Note") in the sum of $150,000, which matured on May

15, 1984—the same date as the Eagle Notes. The Raydens, however, have failed to satisfy the obligation as of this date. (Zito Aff., Exhibit A).

The Rayden Note was secured by a letter of credit issued by Mitsui Manufacturers Bank ("Mitsui"), based in California. The proferring of a letter of credit by the Raydens was the direct result of negotiations between the Raydens and plaintiff Bank. The Rayden letter of credit was scheduled to expire on July 1, 1984, almost seven weeks after the obligation under the Rayden Note matured. On June 31, 1984, the last day before the letter of credit expired, the Bank presented the letter to Mitsui in New York for payment. Mitsui refused to pay under the Rayden letter, claiming that the plaintiff acted negligently by presenting the letter to Mitsui in New York, instead of Los Angeles, as the terms of the letter expressly directed.

On February 26, 1985, the Bank initiated an action against the Raydens to recover $150,000, plus collection costs based upon the default of the Rayden Note. That case, *Bank of Montreal v. Mitsui Manufacturers Bank, Burton Rayden and Jeffrey Rayden*, 85 Civ. 1519, is now pending before Judge Keenan. In that action the Bank also sought, in the alternative, to recover $150,000 from Mitsui, the issuing bank, based upon Mitsui's allegedly wrongful dishonoring of the Rayden letter of credit (Zito Aff., Exhibit B).

On August 29, 1986, the Bank commenced the instant action against defendants Eagle, Schuster and Bolding, seeking to recover the same sum of $150,000 sought to be collected in its action against the Raydens and Mitsui.

On March 23, 1987, defendants Eagle, Schuster and Bolding moved to consolidate the Rayden action with the instant case or, in the alternative, moved for leave to file a third-party complaint against Mitsui. Plaintiff moved for summary judgment in the case at bar on April 10, 1987. This Court now considers only defendants' motion to consolidate.

**Discussion**

Rule 42(a) of the Federal Rules of Civil Procedure provides:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any and all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a) (as amended, 1966).

■ Consolidation pursuant to Rule 42(a) is a well-established method of promoting judicial economy and convenience in cases where common issues of law or fact exist with respect to two actions. "[C]onsiderations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event." *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir.1970) *See Waldman v. Electrospace Corp.*, 68 F.R.D. 281, 283–84 (S.D.N.Y.1975); *Masterson v. Atherton*, 223 F.Supp. 407 (D.Conn., 1963), *aff'd*, 328 F.2d 106 (2d Cir.1964). In order to determine the appropriateness of consolidation, however, a court must balance the interest of judicial convenience against the potential for delay, confusion and prejudice that may result from such consolidation. *Katz v. Realty Equities Corp.*, 521 F.2d 1354, 1362 (2d Cir.1975). *Vaccaro v. Moore–McCormack Lines, Inc.*, 64 F.R.D. 395, 397 (S.D.N.Y.1974). The party seeking consolidation bears the burden of proving that the interest of judicial economy is outweighed by the possibility of prejudice or delay. *Katsaros v. Cody*, 744 F.2d 270 (2d Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

Thus the threshold question in invoking Rule 42(a) is whether common questions of law or fact exist that warrant consolidation of the actions. Plaintiff concedes that both the instant action and the Rayden action seek to collect the same $150,000 from different parties. Memorandum of Law in Opposition to Defendants' Motion to Consolidate or for Leave to File An Amended Complaint and in Further Support of Plaintiff's Motion for Summary Judgment at 5

(hereinafter "Plaintiff's Memo"). However, plaintiff maintains that the two actions were not precipitated by the same transactions or series of transactions. The Bank urges that while the instant action is based exclusively on the Eagle Notes, plaintiff's claims in the Rayden action arise out of the Raydens' failure to honor obligations under the Investor Note and Mitsui's failure to honor the Rayden letter of credit. Therefore, the two claims possess "no common issues of fact." *Id.* at 4. The Bank further contends that defendants' motion to consolidate "is purely maneuvering in order to delay" full resolution of the case at bar. *Id.* at 5.

■ Plaintiff's argument is unavailing. As summarized above, the facts of this case make clear that the Rayden action and the instant case share many common issues of fact and law that are central to the fair resolution of both claims. First, the Rayden action and the instant case were both commenced as a result of the failure by the Raydens to satisfy their obligations to plaintiff pursuant to their Investor Note. This obligation was a direct by-product of the Note Discount Agreement between plaintiff and defendants in the case at bar. As a condition of obtaining financing, the Bank required that every promissory note provided by an investor be endorsed directly to the Bank. Plaintiff's Memo at 2. Thus the Bank was able to recover debts directly from investors such as the Raydens in the event of their default.

In addition, the Bank required that all investor letters of credit which secured the notes be issued in favor of the Bank, rather than Eagle, in order to give the Bank the exclusive right to collect all monies due and owing under them. Thus in defense of the instant action, Eagle asserts that, by allowing the Bank to receive the Rayden Note and letter of credit, Eagle satisfied all of its obligations to the Bank. Zito Aff., Exhibit D at 52 and Exhibit E at 26–27. For this reason, Eagle maintains that the Raydens alone must be held accountable for defaulting on their obligation under their investor note. Defendants also acknowledge that, in the alternative, the Bank may

seek recovery of the $150,000 from the Raydens' bank, Mitsui, based on Mitsui's allegedly wrongful dishonoring of the Rayden letter of credit. Zito Aff. Exhibit A.

As this discussion illustrates, contrary to plaintiff's pronouncements, defendants' obligations under the Eagle Notes are inextricably linked to the obligations of the Raydens and their bank. In both instances the Court must carefully scrutinize the Note Agreement and Pledge Agreement in order to determine whether the Bank and Eagle agreed that investors should be held liable in the event of a default by an investor. Moreover, the ultimate defense raised by defendants in both actions is based on the same set of facts, i.e., that the Bank, by disregarding the explicit terms of the Rayden letter of credit made untimely presentment to Mitsui—thereby rendering the letter of credit unenforceable. Zito Aff., Exhibit C at 6. It is the Bank's position in both actions that, assuming the Rayden letter of credit constituted "pledged collateral," and that Eagle was the beneficiary of such collateral, the Bank made proper presentment of the Rayden letter of credit to Mitsui and therefore Eagle remains liable under the Eagle Notes. The assertion of these common defenses raises problems of duplicative and delayed discovery as well as the danger of inconsistent results.

■ One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results. *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir. 1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976); *Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Assoc.*, 293 F.Supp. 1400 (S.D.N.Y.1968), *aff'd*, 414 F.2d 1326 (2d Cir.1969). Because both the Rayden action and the instant case require judicial determinations concerning the same facts, it is quite possible that separate adjudication of these claims would produce inconsistent results. This danger can only be avoided by consolidation.

Plaintiff contends that even assuming the two cases involve similar questions of law and fact, consolidation of the two ac-

534

tions would result in substantial confusion and prejudice to the plaintiff, as plaintiff's claims in both actions are based on different theories of recovery (i.e., the instant action is based on the Eagle Notes while the Rayden action concerns a defaulting investor). "Such a myriad of competing theories of recovery will confuse and delay the fundamentally simple claims under the Eagle Notes." Plaintiff's Memo at 3. Contrary to plaintiff's position, however, the assertion of different theories of recovery will not cause undue confusion, inasmuch as both claims require litigation of the same set of facts. Rather, the separate litigation of these facts would result in greater confusion and delay to all parties involved.

The Bank insists that "defendants herein seek to compel plaintiff to endure the inconvenience and delay of a trial of their indemnification claim against Eagle limited partners Jeffrey and Burton Rayden." Plaintiff's Memo at 4. This disingenuous reasoning ignores the fact that the Bank commenced two actions on the same obligation. Indeed, plaintiff commenced an action against the Raydens over one year before initiating the Eagle action. This fact suggests that the Bank understood that the defaulting Raydens and their bank, Mitsui, had the primary obligation to pay the amount due under the Eagle Note.

Prior to the codification of the consolidation policy in Rule 42(a), the Supreme Court observed that "consolidation ... does not change the rights of the parties or make those who are parties in one suit, parties in another." *Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331 (1933). Thus as noted in *Quintel Corp., N.V. v. Citibank, N.A.,* 100 F.R.D. 695, 697 (S.D.N.Y.1983), the possibility of confusion resulting from consolidation is usually no greater than that faced by parties in many multi-defendant, multi-count trials. Rather the actions retain their separate identity. *Zdanok v. Glidden Co.,* 327 F.2d 944 (2d Cir.1964), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). It is the mandate of a district judge to insure that a trial of consolidated actions is conducted in a manner not prejudicial to any of the parties. *New England Mutual Life Insurance Co. v. Brandenburg,* 8 F.R.D. 151, 155 (D.C.N.Y.1948). A district judge is also specifically authorized pursuant to Rule 42(a) to "make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed.R.Civ.P. 42(a).

In light of these safeguards and our previous discussion of the facts of this case, the Bank has failed to persuade this Court that substantial prejudice and confusion would result to plaintiff by virtue of consolidation. In an effort to underscore the potential for prejudice, plaintiff has relied on *Continental Bank & Trust Co. v. Platzer,* 304 F.Supp. 228 (S.D.Tex.1969). However, this case is inapposite. In *Continental,* the court concluded that consolidation was inappropriate due to the confusion which would result from one party being placed in the position of being both plaintiff/claimant and a defendant in the same action. The instant case, however, presents no such problem. Clearly the Bank retains the same position, that of claimant, in both actions. Thus the act of consolidation would produce no such confusion or prejudice as was present in *Continental.* Moreover, in sharp contrast to *Continental,* where the cases in question presented no common central issues of fact, the Rayden action and the instant case present many of the same central issues. It appears that plaintiff's references to possible prejudice are merely speculative and not grounded in fact. In the absence of a showing of prejudice to the plaintiff, therefore, this Court's interest in promoting judicial economy becomes paramount.

For the foregoing reasons, defendants' motion to consolidate is granted, and it is hereby ordered that this action be consolidated with *Bank of Montreal v. Mitsui Manufacturers Bank, Burton Rayden and Jeffrey Rayden,* 85 Civ. 1519, now pending before Judge Keenan.

SO ORDERED.