INTERNATIONAL PAVING SYSTEMS, INC., Plaintiff,

v.

VAN–TULCO, INC., Reliance Insurance Company of New York, Reliance Insurance Company, American Reinsurance Company, Employers Reinsurance Corporation and North American Reinsurance Corporation, Defendants.

No. 88 CV 1066.

United States District Court, E.D. New York.

Nov. 10, 1992.

Buckley, Treacy, Schaffel, Mackey & Abate, New York City by George F. Mackey, for plaintiff.

Berger, Steingut, Tarnoff & Stern, by Harvey Weinig, Goetz, Fitzpatrick & Flynn, New York City by Donald J. Carbone, for defendants.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Plaintiff International Paving Systems, Inc. ("IPS") commenced this action against Van–Tulco, Inc. ("Van–Tulco") and the additional defendants, Van–Tulco's sureties on the payment bond which is the subject of this action. IPS is seeking $125,816.07 from Van–Tulco or its sureties for latex modified concrete ("LMC") that IPS supplied to AVA Construction, Inc. ("AVA"), Van–Tulco's subcontractor on a project (the "Project") to build bus ramps for the New York City Department of Transportation ("NYCDOT"). NYCDOT is withholding payment of an outstanding contract balance on its general contract with Van–Tulco (the "General Contract") pending a judicial determination as to the cause of the cracking and delamination of the LMC at the Project.

IPS currently moves for summary judgment on its claim for $125,816.07 on two

grounds: first, that the LMC met the specifications of the General Contract and was therefore not defective; and second, that IPS merely supplied the LMC, but did not oversee its installation or otherwise participate in the Project. As a result, IPS alleges that it is entitled to recover payment for the LMC. Defendants counter, *inter alia,* that the motion should be denied because there are triable issues of fact with respect to whether the LMC itself was defective and whether IPS provided faulty technical assistance and advisory services on the Project. The Court denies the motion for summary judgment for the reasons explained below.

Also before the Court is Van–Tulco's cross-motion to consolidate this action with a related matter pending before this Court, captioned *Donald J. Crecca, as trustee in bankruptcy for AVA Construction, Inc. v. Van–Tulco, Inc. et al.,* 90 Civ. 0531 (DRH) (the "Related Action"), on the ground that both actions involve common questions of law and fact. The Court grants this motion for the reasons stated below.

### BACKGROUND

*A. The Contracts*

In June of 1983, the City of New York (the "City") entered into a contract with Berger, Lehman Associates, P.C., Consulting Engineers, ("BLA") pursuant to which BLA was to design and plan the work for a construction project involving the renovation of the bus ramps at the St. George Ferry Terminal in Staten Island, New York. A few weeks later, the City, acting through the NYCDOT, entered into the General Contract with Van–Tulco for work on the Project.

As part of the General Contract, Van–Tulco furnished a labor and material payment bond (the "Bond") on which Van–Tulco acted as principal and defendants Reliance Insurance Company of New York, Reliance Insurance Company, American Reinsurance Company, North American Reinsurance Company and Employers Re-

insurance Corporation acted as joint and co-sureties. Pursuant to the Bond, Van Tulco and the joint and co-sureties are jointly and severally liable for the payment of all entities furnishing materials for or performing labor in the work provided for in the General Contract.

As part of its efforts to comply with the General Contract, Van–Tulco entered into a subcontract with AVA Construction, Inc. ("AVA") whereby AVA was to perform that portion of the work on the project involving the installation of the LMC. AVA entered into an agreement with IPS, as sub-subcontractor, pursuant to which IPS was to supply the LMC for the Project.

The placement of the LMC overlay at the Project took place in two phases: ramps five and six were poured in late May and June of 1986, and ramps three and four were poured in November of 1986. Subsequently, cracking and delamination was discovered on some portion of the ramps.[1] As a result, the City is currently withholding payment of an outstanding contract balance to Van–Tulco pending a judicial determination of, *inter alia,* the cause of the cracking and delamination.

*B. The Actions on the Contracts*

On or about April 7, 1988, IPS commenced this action against Van–Tulco, as principal, and the additional defendants, Van–Tulco's sureties, to recover pursuant to the Bond. IPS is seeking from Van–Tulco or its sureties $125,816.07 which AVA failed to pay IPS pursuant to their sub-subcontract for the LMC.

In another action before this Court, Donald J. Crecca, as trustee in bankruptcy for AVA, is suing Van–Tulco for $238,099.83 due on its subcontract for the LMC supplied and installed at the Project. In that action, Van–Tulco has asserted a counterclaim and offset against AVA for at least $813,244.50 on the ground that the cracking and delamination of the LMC was due to defects in the workmanship and materials furnished by AVA. The sum represents the amount which the NYCDOT

1. Plaintiff claims this discovery occurred in or about May of 1987, while defendant contends

that it was as early as July of 1986. The exact date is of no moment.

claims is necessary to remedy the defects in the LMC. Van–Tulco also brought a third-party action against the City of New York asserting that Van–Tulco installed the LMC in accordance with the plans and specifications for the Project but that those plans and specifications were defective. Van–Tulco thus seeks to recover the outstanding balance due under the General Contract. The City, in turn, brought a fourth-party action against BLA asserting that if the plans and specifications were defective, it is BLA's responsibility. Against this procedural back-drop, the Court turns to a discussion of the motions before it.

## DISCUSSION

### I. *Motion for Summary Judgment*

#### A. *Applicable Standard*

A motion for summary judgment may be granted only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion", and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Trebor Sportswear Co. Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all inferences against the moving party, *see Donahue*, 834 F.2d at 57, and only "disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Mindful of these principles, the Court turns to the case at bar.

### I.

#### *Plaintiff's Position*

■ IPS' primary contention in support of its motion is that it was a mere supplier of the LMC and that the LMC it supplied has not been found defective. Accordingly, IPS asserts that it is entitled to payment for the LMC it supplied to the Project.

#### (i) *The Quality of the LMC*

In support of its position that the LMC it supplied was not defective, plaintiff offers the affidavit of George Mackey, Esq., attorney for plaintiff. The affidavit makes the following assertions: (1) IPS has never been contacted by any entity with respect to any problem with the LMC, other than the instant action, Mackey Aff. ¶ 10; (2) a Van–Tulco inter-office memo, dated May 26, 1987, stated that the problem of cracking "is in design and not workmanship or material", exhibit 4 attached to *id.;* (3) none of the four reports prepared in connection with investigations into the cracking and delamination of a portion of the LMC implicated plaintiff's product, *id.* ¶ 11; (4) the deposition of James M. Coddington, Project Manager for CRS Sirrine of New York ("CRS"), Inc., who conducted an investigation that culminated in one of the aforementioned reports, reveals that Mr. Coddington found no deficiencies with the product, exhibit 6 attached to *id.;* and (5) the deposition of Robert F. O'Connell, the Project Manager for BLA on the Project, whom the City requested investigate the cracking and delamination, reveals that "the latex modified concrete met the specifications of the contract", exhibit 7 attached to *id.*

#### (ii) *IPS as Supplier*

In support of its position that IPS was merely a supplier and had no advisory role at the Project, plaintiff submits the affidavit of Martin C. Zurbriggen, the former Vice President of plaintiff, who was responsible for the day-to-day coordination and billing aspects of all IPS activities, including the activities that are the subject of this action. Zurbriggen states that "[i]t is important to note that while plaintiff IPS

furnished the materials on the project, it performed no labor to place the LMC material. Rather, AVA retained that obligation under its subcontract with Van–Tulco." Zurbriggen Aff. ¶ 6.

To corroborate this statement, plaintiff offers Mr. Zurbriggen's deposition testimony, which states that on the East Coast, IPS only acted as a material supplier of LMC, Zurbriggen Depo. at 44, and that with respect to the Project, Zurbriggen was not aware of any "directions" to AVA employees as to "the manner in which the LMC [was] to be placed". *Id.* at 44–45. Moreover, plaintiff offers the deposition testimony of Thomas Kress, IPS' superintendent on the Project, who said that IPS' "entire job [was] to produce that latex modified concrete for AVA Construction as a supplier." Kress Depo. at 10; *see also id.* at 16 ("[AVA] directed. We produced. We just produced the concrete for AVA Construction, and they said when to pour it and when to stop, basically.").

In sum, plaintiff offers support for the position that because the LMC was not defective and because the supply of the LMC was plaintiff's only contribution to the Project, plaintiff is entitled to recover on its contract with AVA, irrespective of the cracking and delamination.

## II.

### *Defendants' Position*

Defendants contend that at a minimum there are issues of fact with respect to whether the LMC was defective and as to whether IPS ever acted in an advisory capacity for the Project. In support of its position, defendants offer a report prepared by Lev Zetlin Associates and commissioned by the NYCDOT (the "Zetlin Report") and the affidavit of John M. Doherty, Van–Tulco's on-site Project Manager for the Project, who "personally observed the actual placement of the LMC at the Project". Doherty Aff. ¶ 4.

### (i) *The Quality of the LMC*

The Zetlin Report states that the LMC product supplied by IPS may have been defective because:

"air-entrainment studies indicate that the LMC overlay ... [has] poor air-entrainment.... Assuming that these air-entrainment results are representative of that present in the ramps, it is likely that eventually the concrete would incur freeze/thaw damage. Three cores were subjected to petrographic and air-entrainment studies by Richard Co. Mieclenz, P.E., Inc. ..... The primary findings were: ... The air-entrainment for the LMC overlay was found to be inadequate."

Carbone Affidavit ¶ 18 (citing Exhibit 8 attached to Mackey Affidavit at p. 22). The air-entrainment admixture to the LMC was supplied by and added to the LMC during the mixing of the LMC by IPS in its concrete trucks at the Project site. Carbone Affidavit ¶ 18 (citing Doherty Affidavit).[2]

### (ii) *IPS As Supplier*

According to defendants, IPS "not only supplied the materials constituting the LMC but, most importantly, provided technical supervision and advice to AVA during the actual placement of the LMC at the Project site." Doherty Affidavit ¶ 5. More specifically, defendants claim that the City's construction manager at the Project, Cliff Gordon of CRS, informed AVA that the LMC was not being properly placed and insisted that IPS provide on-site technical assistance to AVA. *Id.* ¶ 7. Thereafter, IPS' Technical Sales Engineer, Chess DuBrowa, was present at the Project during AVA's placement of the LMC and supervised the same. *Id.*

IPS' presence and advisory role at the Project is corroborated by the daily diary maintained by CRS which states, in relevant part, under an entry dated June 12, 1986:

at issue, it may have caused the LMC to fall short of contractual specifications, *see id.* ("this factor would eventually cause deterioration"), and thus be relevant to plaintiff's ability to recover on the contract.

**2.** In this case, no evidence of damage due to air-entrainment was found. *See* Exhibit 8 attached to Mackey Affidavit at p. 36. However, irrespective of whether the air-entrainment admixture resulted in the cracking and delamination

"Chess DuBrowa on site representing International Paving Systems. An informal meeting was called between CRS, J. Doherty, DuBrowa and superintendent of AVA regarding AVA's work procedures in installing latex modified concrete. Mr. DuBrowa recommended that AVA lower the vibrations on the screen to remove all standing water that exists behind the men installing the latex concrete.... *Mr. DuBrowa would be on site for technical guidance during tomorrow's pour.* (emphasis added).

An entry dated June 13, 1986, states: "DuBrowa on site providing technical guidance during latex placement. He said he would return from the job when Ramp No. 3 and 4 are ready." *Id.* Finally, defendant has submitted a letter from DuBrowa dated July 27, 1986 providing written recommendations to Mr. Gordon of CRS on the procedures to be followed for the placement of the LMC. Exhibit B attached to Doherty Affidavit.

Affiant Doherty also asserts that DuBrowa advised him that the New York State Department of Transportation ("NYSDOT") temperature specifications did not have to be strictly followed. Doherty Affidavit ¶ 14. In reliance on that advice, AVA occasionally placed the LMC on days when the ambient temperature fell below 45 degrees or was in excess of 85 degrees. *Id.* Also in reliance on IPS' advice and contrary to NYSDOT specifications, AVA did not cover the LMC with burlap within thirty minutes of its placement. *Id.*[3]

According to a report prepared by Lev Zetlin Associates, the placement of LMC at excessively high temperatures and the failure to cover it with burlap shortly after its placement was a cause of the cracking and delaminations. Carbone Affidavit ¶ 15 (citing Exhibit 8 attached to Mackey Affidavit at pp. 36–37). In fact, the product bulletin from Reichhold Chemical Inc., the manufacturer who supplied IPS with the LMC, states that the LMC "should be placed when temperatures are between 50 and 80 degrees [Fahrenheit]" and "it is usually necessary to cover the product with wet burlap and plastic sheeting as soon as the surface is set." Exhibit C attached to Doherty Affidavit at p. 2.

In sum, it is defendants' position that any alleged defects in the LMC may have resulted from either the incorrect technical assistance rendered by IPS to AVA, Van–Tulco and CRS or from the deficiency of the product itself. *See* Doherty Affidavit ¶ 20.

### III.

In accordance with the mandate of Fed. R.Civ.P. 56, plaintiff in this case has identified materials which, in its view, demonstrate the absence of a genuine issue of material fact. Those materials are outlined above. Defendants have responded by offering materials, also described above, that demonstrate that there are factual issues demanding resolution prior to deciding this case as a matter of law. These factual issues, namely whether the material supplied by IPS was defective and/or whether IPS was involved in an advisory capacity with the placement of the LMC, are material to the instant action, in that they must be resolved to determine whether IPS is entitled to full payment on its contract with Van–Tulco.[4] Thus, having resolved all

---

**3.** Mr. DuBrowa acknowledges in his affidavit that he "made certain recommendations to Mr. Gordon". DuBrowa Reply Affidavit ¶ 5. However, he further asserts that he "left it up to CRS, as resident engineer, Van–Tulco as general contractor, and AVA as subcontractor ... as to whether those recommendations would be followed" and he "had absolutely no power to enforce [the] recommendations". *Id.* The Court fails to see how these assertions are inconsistent with those defendants have set forth in opposition to plaintiff's motion: advice is just that, and need not be construed as a directive. However, the Court need not decide whether or not the parties' respective positions on this point are consistent. To the extent they are consistent, plaintiff's argument that it is entitled to full payment in spite of its advisory role fails as a matter of law. To the extent they are inconsistent, defendants' assertions create a genuine issue of material fact.

**4.** The materiality of these issues to the instant action does not appear to be in dispute. In fact, plaintiff offers its positions with respect to these issues in support of its motion. In any case, the issue of whether the LMC is defective goes to IPS' ability to recover on the contract, and the

ambiguities against plaintiff, *see Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987), and recognizing that summary judgment is disfavored, *Sobel v. Yeshiva University*, 477 F.Supp. 1161, 1166 (S.D.N.Y.1979) (citing *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir.1975)), this Court finds that there are genuine issues of fact that preclude the entry of summary judgment at this time. This Court need not reach the remainder of the parties' arguments. Plaintiff's motion is denied.

## II. *Motion for Consolidation of Actions*

As noted, defendants have cross-moved to consolidate the instant action with the Related Action pending before this Court. Fed.R.Civ.P. 42(a) provides in relevant part as follows:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

The Court has broad discretion to consolidate actions, *Moore v. Am. Telephone and Telegraph Communications, Inc.*, No. 85 Civ. 4028, 1990 WL 250145 (S.D.N.Y. December 21, 1990) (citing *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987)), and may use that discretion to consolidate cases at the pretrial stage to serve judicial economy, as long as any confusion or prejudice that may result does not outweigh efficiency concerns. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir. 1990). Actions consolidated under Rule 42(a) generally retain their separate identities in order to avoid any adverse impact on the rights of the parties. *Moore*, No. 85 Civ. 4028, 1990 WL 250145 (citing *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496–97, 53 S.Ct. 721, 727–28, 77 L.Ed. 1331 (1933)).

"One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results." *Bank of Montreal v. Eagle Assoc.*, 117 F.R.D. 530, 533 (S.D.N.Y.1987). As explained above, both this case and the Related Action concern the defective condition of the LMC at the Project and payment for the same. The actions differ only insofar as the instant action concerns the contractual relationship between IPS and Van–Tulco, whereas in the Related Action, AVA is suing Van–Tulco for the money due on its subcontract, and Van–Tulco has counterclaimed against AVA on the ground that AVA is responsible for the cracking and delamination. Because IPS provided the LMC pursuant to a sub-subcontract with AVA, IPS' responsibility for the cracking and delamination may be integral to a determination of AVA's responsibility. Thus, both actions involve the same issues of fact and law: What entity or entities is responsible for the cracking and delamination and which parties, if any, should recover on their contracts.

If this Court does not consolidate these actions, IPS could, in theory, obtain payment for the LMC under the payment bond in this action. Then, in the Related Action, it may be determined that IPS was at least partially responsible for the cracking and delamination of the LMC. This would cause the very inconsistent verdicts that consolidation aims to avoid and would be an inefficient use of judicial resources.

The Court notes that plaintiff has not made a sufficient showing that prejudice would result from the requested consolidation. However, if, as the case develops, such problems arise, the Court will address them at that time. Therefore, in the exercise of its discretion, and in an effort to avoid inconsistent verdicts, this Court hereby orders the consolidation of the above-captioned action with *Donald J. Crecca, as Trustee in Bankruptcy for AVA Construction Inc., v. Van–Tulco, Inc. et al.*, 90

issue of IPS' advisory role goes to any potential offsets against IPS, especially in light of the consolidation of this action with the Related

Action that involves counterclaims by Van–Tulco. *See* discussion, *infra*.

Civ. 532 (DRH), without prejudice to plaintiff to renew its application at a later date.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied and defendants' cross-motion for consolidation is granted. The Clerk of the Court is ordered to close 90–CIV–531 (DRH) and consolidate it with the instant action.

SO ORDERED.