Primavera FAMILIENSTIFTUNG,
on behalf of itself and all others
similarly situated, Plaintiff,

v.

David J. ASKIN; Askin Capital Management, L.P.; Geoffrey S. Bradshaw–Mack; Kidder, Peabody & Co., Incorporated; Bear Stearns & Co. Incorporated; and Donaldson, Lufkin & Jenrette Securities Corporation, Defendants.

MONTPELLIER RESOURCES LIMITED, Nandalor Investment Partnership, Flamingo Investments Limited, Chesterwood, Ltd., Palmareal, Limited, Sebo, Limited, Glenwood Partners, L.P., Glenwood Trust Company as Custodian for Walker Art Center, Glenwood Trust Co. Group Trust II, Glenwood Balanced Fund, L.P., National Spinning Company Profit Sharing Plan and Trust, Sofa Partners, Global Hedge Fund, William Monaghan, Arbor Place, L.P., Levitt Family Trust, Roma Malkani, Concorde Asset Management, Inc. and Meespierson Nominees (Guernsey) Limited, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

ASKIN CAPITAL MANAGEMENT, L.P., Kidder Peabody & Co. Incorporated, Bear Stearns & Co., Inc., and Donaldson, Lufkin & Jenrette Securities Corporation, Defendants.

Nos. 95 Civ. 8905(RWS),
97 Civ. 1856(RWS).

United States District Court,
S.D. New York.

March 19, 1998.

Bernstein Litowitz Berger & Grossmann by Jeffrey A. Klafter, Robert S. Gans, of Counsel, New York City, Gold Bennett & Cera by Solomon B. Cera, Gary A. Garrigues, of Counsel, San Francisco, CA, for Primavera.

Zuckerman, Gore & Brandeis by Peter O. Morgenstern, of Counsel, New York City, for Montpellier, et al.

Shereff, Friedman, Hoffman & Goodman by Andrew J. Levander, Shari L. Steinberg, David S. Hoffner, of Counsel, New York City, for Askin Capital Mgt. and David J. Askin.

Morgan, Lewis & Bockius by Gary G. Staab, Scott S. Balber, Kevin Ainsworth, of Counsel, New York City, for Donaldson, Lufkin & Jenrette Securities.

Fried, Frank, Harris, Shriver & Jacobson by William McGuinness, David M. Morris, Albert Shemmy Mishaan, of Counsel, New York City, for Bear Stearns & Co., Inc.

Cleary, Gottlieb, Steen & Hamilton by Thomas J. Moloney, Mitchell A. Lowenthal, Robin A. Henry, Carmine D. Boccuzzi, Jr., of Counsel, New York City, for Kidder, Peabody & Co., Inc.

## OPINION

SWEET, District Judge.

Primavera Familienstiftung ("Primavera") and Montpellier Resources Limited ("Montpellier"), both plaintiffs in related securities fraud actions, have each moved for class certification pursuant to Rule 23, Fed. R.Civ.P. and for appointment as class representative.

In addition, Montpellier has moved pursuant to Rule 42(a), Fed.R.Civ.P., for consolidation of its action, styled *Montpellier Resources Limited et al. v. Askin Capital Management, L.P.,* No. 97 Civ. 1856 (S.D.N.Y.) (the "Montpellier Action"), with that of Primavera, styled *Primavera Familienstiftung v. Askin,* No. 95 Civ. 8905, 1996 WL 494904 (S.D.N.Y.) and with *ABF Capital Management v. Askin Capital Management, L.P.,* No. 96 Civ. 2678, 1997 WL 317365 (S.D.N.Y.) (the "ABF Action").

For the reasons set forth below, both motions for class certification will be denied, and Montpellier's motion for consolidation will be granted.

### Parties

#### Parties of the Primavera Action

Primavera is a Liechtenstein Foundation. It proposes to sue on behalf of itself and all others similarly situated.

Defendant David J. Askin ("Askin") was the Chief Executive Officer of Askin Capital Management, L.P. ("ACM") (collectively, the "ACM Defendants").

Defendant ACM, a Delaware limited partnership, was a registered investment adviser at all times relevant to this action, whose exclusive place of business was New York City.

Defendants Kidder, Peabody & Co., Inc. ("Kidder"), Bear Stearns & Co., Inc. ("Bear Stearns"), and Donaldson, Lufkin & Jenrette Securities Corporation ("DLJ") (collectively,

the "Broker Defendants"), are all broker-dealers and Delaware Corporations with their principal places of business in New York City.

Non-parties Granite Partners L.P. ("Granite Partners"), registered in the State of Delaware, Granite Corporation ("Granite Corp."), incorporated in the Cayman Islands, and Quartz Hedge Fund ("Quartz"), incorporated in the Cayman Islands (collectively, the "Funds"), are investment funds established and managed by Askin. ACM is the investment adviser of the Funds.

### Parties of the Montpellier Action

Montpellier and its fellow plaintiffs[1] are shareholders and/or limited partners in Granite Corp., Quartz and Granite Partners.

ACM and the Broker Defendants are Defendants in the Montpellier Action.

### Prior Proceedings

#### Primavera Action

The facts and prior proceedings in the Primavera Action are set forth in the Court's prior opinions in this matter. *Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905, 1996 WL 494904 (S.D.N.Y. Aug. 30, 1996) ("*Primavera I*"); *Primavera Familienstiftung v. Askin*, 1996 WL 580917 (S.D.N.Y. Oct. 9, 1996) ("*Primavera II*"); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115 (S.D.N.Y.1997) ("*Primavera III*"). Familiarity with the prior opinions of this Court is assumed.

Primavera initially filed this action in the United States District Court for the Northern District of California against the ACM Defendants on March 24, 1995. The initial complaint was first amended on May 10, 1995. On or about September 20, 1995, Primavera again amended its complaint to add the Broker Defendants.

The case was transferred to this Court on October 18, 1996, and assigned here based on its relation to *Kidder, Peabody & Co. v. Unigestion International, Ltd.*, 903 F.Supp. 479 (S.D.N.Y.1995).

In an opinion dated August 22, 1996, a motion to dismiss brought by the Defendants' was granted, with leave granted to Primavera to replead the federal securities law claims and common law fraud claims which had lacked sufficient particularity. *Primavera I*, 1996 WL 494904. The ACM Defendants' motion to reargue was granted and the Section 20(a) claim for control person liability was dismissed by an opinion dated October 9, 1996, *Primavera II*, 1996 WL 580197.

Primavera filed the Third Amended Complaint on November 8, 1996. In the complaint, Primavera asserts claims for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (Count One, against ACM and Askin), violation of Section 20(a) of the 1934 Act (Count Two, against ACM and Askin), common law fraud (Count Three, against ACM and Askin), and aiding and abetting common law fraud (Count Four, against the Broker Defendants).

In an opinion dated June 9, 1997, a motion by ACM and the Broker Defendants to dismiss the Third Amended Complaint was denied. The opinion granted a motion to dismiss claims against him brought by then-defendant Geoffrey S. Bradshaw–Mack ("Bradshaw–Mack"), who was ACM's Director of Marketing. Leave to replead the claims against Bradshaw–Mack was not granted. Finally, Primavera's motion to consolidate the Primavera Action with the ABF Action for pretrial purposes was granted. *Primavera III*, 173 F.R.D. 115.

---

**1.** Montpellier's co-plaintiffs are Nandalor Investment Partnership, Flamingo Investments Limited, Chesterwood, Ltd., Palmareal Limited, Sebo, Limited, Glenwood Partners, L.P., Glenwood Trust Company as Custodian for Walker Art Center, Glenwood Trust Co., Group Trust II, Glenwood Balanced Fund, L.P., National Spinning Company Profit Sharing Plan and Trust, Sofa Partners, Global Hedge Fund, William Monaghan, Arbor Place, L.P., Levitt Family Trust, Roma Malkani, Concorde Asset Management, Inc. and Meespierson Nominees (Guernsey) Limited (collectively, the "Montpellier Plaintiffs").

### Montpellier Action

The Montpellier Plaintiffs filed their action on March 17, 1997, and filed an amended class action complaint on June 5, 1997, (the "Montpellier Complaint") alleging that ACM had deceived the Montpellier Plaintiffs concerning the nature of their investment in the Funds and the manner in which ACM managed the Funds. The Montpellier complaint further alleges that the Brokers substantially assisted in ACM's wrongdoing. The Montpellier Complaint seeks relief on a class-wide basis on behalf of investors who are not plaintiffs in either the ABF Action or the Primavera Action.

### The Instant Motions for Class Certification

On June 20, 1997, the Montpellier Plaintiffs filed their motion for class certification and consolidation with the ABF Action. On July 1, 1997, Primavera filed a competing class certification motion. On September 9, 1997, Montpellier and Primavera entered a stipulation and order governing discovery and briefing schedule for the competing class certification motions. Oral argument was heard on January 7, 1998, and further materials were submitted on January 9, 13, and 14, 1998, at which time the motions were deemed fully submitted.

### Facts

▮ For purposes of deciding a Rule 23 motion for class certification, the allegations set forth in the complaint are accepted as true. See, Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n. 15 (2d Cir.1978); Vine v. Beneficial Finance Co., 374 F.2d 627, 632–33 (2d Cir.1967); In re NASDAQ Market–Makers Antitrust Litig.; 172 F.R.D. 119 (S.D.N.Y.1997). The facts presented herein are taken from the complaints in the Primavera Action and Montpellier Action and are limited to this motion.[2]

The Primavera and Montpellier Actions have each arisen from the collapse in 1994 of the three Funds promoted and managed by Askin and ACM. Both Primavera and Montpellier assert that they and other investors received and relied upon fraudulent documents and representations from the ACM Defendants regarding the nature of investment in the Funds. According to the complaints, the ACM Defendants represented the Funds as "low risk" and "low volatility." However, the ACM Defendants purchased mass quantities of esoteric securities that were so risky and volatile that the Broker Defendants frequently referred to them as "toxic" or "nuclear waste." Specifically, the Funds were engaged in the business of trading derivative securities, primarily mortgage-backed securities, including Collateralized Mortgage Obligations ("CMOs").

CMOs are derivative securities that represent distinct interests in the cash flow generated by an underlying collateral pool of residential mortgages. The cash flow generated by this pool is derived from two sources: (i) repayment of principal; and (ii) interest payments. Consequently, the value of a particular CMO depends upon the extent to which the instrument is entitled to share in the proceeds of the cash flow. For example, CMOs entitling the holder to principal payments are especially valuable in times of declining interest rates, since holders of the underlying mortgages are likely to refinance their existing mortgages to avail themselves of the lower rates, thereby increasing principal prepayments. Conversely, CMOs linked to interest payments typically increase in value during times of rising interest rates, since mortgage holders are less likely to refinance, thereby decreasing principal prepayments and increasing interest payments.[3] Therefore, based upon the relationship between fluctuations in interest rates and mortgage prepayments, it is theoretically possible

---

2. While the allegations below are made by both Primavera and Montpellier, the Actions differ in theory; Primavera asserts claims under the securities law, while Montpellier seeks recovery for common law fraud, breaches of fiduciary duty and aiding and abetting fraud and breach of fiduciary duty.

3. CMOs that rise in value in relation to interest rate declines are generally described as "bullish", while CMOs that decline in value during such declines re described as "bearish."

to customize CMO instruments to hedge against interest rate variations.

The ACM Defendants had represented to investors that they employed a proprietary computerized analytical models to monitor and adjust the Funds' portfolios according to the interest rate variations. However, no such computer model existed. Instead, Askin relied exclusively upon crude models and software generally available in the industry that were virtually useless in evaluating the effective duration of the funds. As a result, the Funds' portfolios were highly illiquid and the Funds were clearly at risk of becoming forced sellers of securities under adverse market conditions.

Primavera and Montpellier further allege that the ACM Defendants steered the bulk of the Funds' business to the Brokers, who made millions of dollars from their dealings with ACM and had a strong incentive to assist Askin in this scheme, since the sale of highly esoteric securities provided the means for the Broker Defendants to expand their presence in the broader mortgage-backed securities markets. According to Primavera and Montpellier, the Broker Defendants knew that the Funds were not purchasing "high quality" and "low risk" securities, and that ACM was falsely representing these facts to investors. The Broker Defendants allegedly knew that the Funds' portfolio had been leveraged into a bullish position rather than the neutral position promised to investors. The Broker Defendants ensured that the Funds would continue to purchase otherwise unmarketable instruments by providing artificially inflated estimates of their value to the Askin Defendants, which laid the basis for the false and misleading representations issued to investors concerning the performance of the Granite Funds. In addition, although they knew that ACM was becoming over-leveraged and illiquid, the Brokers extended unusually favorable credit terms to ACM to induce ACM to continue to purchase these securities. The willingness of the Askin Defendants to purchase the most esoteric of securities allowed the Broker Defendants to sell less risky instruments to other customers.

Beginning in February 1994, the Funds began to collapse as a result of a rise in the benchmark federal reserve interest rate. In March 1994, when the Funds proved unable to meet the Broker Defendants' increasingly severe margin calls, the Broker Defendants began to liquidate the Funds' margin accounts in order to favor themselves at the expense of the funds and their investors. On April 7, 1994, the Funds filed petitions for protection under Chapter 11 of the Bankruptcy Code.

### Discussion

### I. The Class Certification Motion

Plaintiffs seeking to maintain a class action must meet the following perquisites:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), Fed.R.Civ.P. Once the above requirements are satisfied, a class may be certified if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3), Fed.R.Civ.P. Because the Montpellier Plaintiffs and Primavera have not established that numerosity defeats the practicability of joinder, certification must be denied.

### Prerequisites of Numerosity and Impracticability of Joinder as Set Forth in Rule 23(a) Have Not Been Met

■ Rule 23(a)(1) is satisfied if "the numerosity makes joinder of all class members impracticable." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). Impracticability does not mean impossibility, but rather difficulty or inconvenience. *NASDAQ*, 169 F.R.D. at 508; 7A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure: Civil 2d*, § 1762 at 159.

Primavera defines a class made up of all persons and entities, excluding defendants and their affiliates, who (a) purchased, directly or beneficially, securities issued by any of the Granite Funds from January 26, 1993 through the date the Granite Funds went bankrupt and (b) owned, directly or beneficially, any interest in the Granite Funds on March 30, 1994. Primavera asserts that the class consists of 118 members, comprised of 41 investors in Granite Partners, 49 investors in Granite Corp., and 28 investors in Quartz.[4]

Montpellier defines its the class period from January 1, 1991 through April 7, 1994. Montpellier asserts that there are 138 potential class members, comprised of 50 investors in Granite Partners, 60 investors in Granite Corp., and 27 in Quartz. Whether the total number of potential class members is 118 or 138, both Montpellier and Primavera contend that members are too numerous to be joined in the current actions, particularly in light of the geographic dispersion of class members throughout the United States and other countries.

■ Whether joinder is practicable does not depend on hard numbers, however. In determining whether a proposed class "is so numerous that joinder of all members is impracticable," courts look at a number of factors, including: (1) judicial economy arising from the avoidance of a multiplicity of actions; (2) the geographic dispersion of class members; (3) the financial resources of class members; (4) the ability of claimants to institute individual lawsuits; (5) the amount of each member's individual claim; (6) knowledge of the names and existence of the potential class members; and (7) whether potential class members have already joined other actions. *See, e.g., Robidoux*, 987 F.2d at 936; *Block v. First Blood Assocs.*, 125

F.R.D. 39, 42 (S.D.N.Y.1989). "In dealing with the issue of numerosity, we deal with it not in absolute numbers, but in the relationship of the numbers of the putative class members involved to their economic interests and all of the other circumstances peculiar to [each] case." *Elliott Assoc. v. J. Henry Schroder Bank & Trust*, 655 F.Supp. 1281, 1285 (S.D.N.Y.1987)).

■ Application of these factors to the instant action does not support grant of class certification. In the first place, a multiplicity of actions can no longer be avoided, in light of the five actions already filed and pending before this court, which collectively account for 61 of the potential class members.[5] Primavera and Montpellier contend that the remaining potential members could conceivably each file a separate action for his or her claim. Primavera and Montpellier do not indicate why this eventuality would be more efficiently avoided through class certification than through joinder, however. Although the class members are geographically dispersed, the identity and whereabouts of all potential class members are known to the parties. Primavera and Montpellier could easily contact potential litigants and propose joinder to their actions. Knowledge of names and existence of members has been called the "most important" factor, precisely because it renders joinder practicable. *Giullari v. Niagara Falls Memorial Medical Center*, No. 96 Civ. 0271, 1997 WL 65862 at *3 (W.D.N.Y. Feb. 5, 1997); *see also, Moore v. Trippe*, 743 F.Supp. 201, 211 (S.D.N.Y. 1990) ("[T]here appears to be little difficulty in joining all the members of the [class] in this one action ... all the members ... are clearly known ..."); *Block*, 125 F.R.D. at 43 ("the solicitation to join Block as plaintiff demonstrates that the names and addresses of each of the limited partners were known

**4.** Primavera and Montpellier both concede that their class member estimates are only approximate, because some members invested in more than one fund.

**5.** The number of uncaptured class members left once currently joined parties are discounted is under dispute. The Broker Defendants contend that, taking the class number asserted by Montpellier, 138, and discounting those already prosecuting an action, those who withdrew investments prior to the Funds' collapse, those investments made by Defendants and insiders and those investments made by a single investor but double-counted, the remaining class members number 38. Primavera and Montpellier contest the Broker Defendant's calculations. Leaving aside these contentions, the number of currently unrepresented potential class members ranges from 57 (if Primavera's class number is employed) to 77 (if Montpellier's class number is employed).

prior to the commencement of this action and that it was practicable to communicate personally with each limited partner and to arrange for his or her joinder.") [6]

The financial resources of the potential class members, their ability to institute individual lawsuits and the amount of each claim also militate against grant of class certification.

> One of the basic reasons for promulgating rule 23 was to provide small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation. When the size of each claim is significant, and each proposed class member therefore possesses the ability to assert an individual claim, the goal of obtaining redress can be accomplished without the use of the class action device.

*Stoudt v. E.F. Hutton & Co., Inc.*, 121 F.R.D. 36, 38 (S.D.N.Y.1988).[7] The 38 to 40 potential plaintiffs here are sophisticated investors, with sufficient financial resources to protect their own interests. Moreover, the majority of potential class members invested well over $1 million, with some investing in the tens of millions and none investing less than $100,-000. Under these circumstances, the principle of protection for weaker plaintiffs which underlies Rule 23 cannot be invoked, nor can joinder be said to be impracticable. *See Elliott Associates*, 655 F.Supp. at 1284-85 (large size of claims held by only 47 potential members indicated joinder was practicable); *Block* 125 F.R.D. at 43 (class members have financial resources and stake which would make joinder practicable).

**6.** Primavera attempts to distinguish *Block* on the grounds that the *Block* plaintiff's position was contrary to the position taken by the limited partnership, and this opposition provided a ground for denying class certification. However, failure to establish impracticability of joinder furnished an alternative and sufficient ground for the denial, notwithstanding any conflict of interest consideration.

**7.** Primavera also seeks to distinguish *Stoudt* because the denial of class certification turned in part on the court's conclusion that Rule 23 should not be used to strengthen the bargaining

## II. *The Consolidation Motion*

As set forth above, Montpellier has moved for consolidation of its action with that of Primavera and ABF. Rule 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Rule 42(a), Fed.R.Civ.P.

A district court has broad discretion to consolidate actions. *Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003, 1006 (2d Cir.1995) *vacated on other grounds*, 518 U.S. 1031, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996); *International Paving Systems, Inc. v. Van–Tulco, Inc.*, 806 F.Supp. 17, 22 (E.D.N.Y.1992). While the "discretion to consolidate is not unfettered" and "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial," *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir.1990), so long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate. *International Paving Systems, Inc. v. Van–Tulco, Inc.*, 806 F.Supp. 17, 22 (E.D.N.Y.1992).

Montpellier cites the reasons set forth in *Primavera III* in support of its motion for consolidation. In that decision, consolidation of the Primavera and ABF actions was granted because it was uncontested that the two actions share common legal and factual issues and because all parties conceded that coordinated discovery was desir-

position of plaintiffs, which conflicts with this Court's conclusion in *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 528 (S.D.N.Y.1996) that certification would be appropriate to "equalize the bargaining power between plaintiffs as a group and Defendants as a group." It is *NASDAQ* which is distinguishable from the instant action rather than *Stoudt*. *NASDAQ* concerned a class of hundreds of unidentified investors, large and small, in the Nasdaq market. As pointed out from the bench at oral argument, *NASDAQ* presented an entirely different scenario from the case at hand.

able to avoid duplication and waste of time. *Primavera III,* 173 F.R.D. at 129. In addition, the federal securities law and common law fraud claims shared substantial similarities. *Id.* at 130. Montpellier's action asserts the same common law fraud claims as those presented in the ABF action, and therefore presents the same efficiency benefits and common issues as formed the basis for the prior grant of consolidation. Moreover, there is no opposition to Montpellier's consolidation motion from any other party.

### Conclusion

For the reasons set forth above, class certification is denied to both Primavera and the Montpellier Plaintiffs. The motion to consolidate the Montpellier Action with the Primavera and ABF Actions is granted.

It is so ordered.