**WALTER SWEENEY, Respondent, v PRISONERS' LEGAL SERVICES OF NEW YORK, INC., et al., Appellants.**

Third Department, March 2, 1989

## APPEARANCES OF COUNSEL

*Harris, Beach, Wilcox, Rubin & Levey (Patricia A. Hulley* of counsel), for appellants.

*Rowley, Forrest & O'Donnell, P. C. (Robert S. Hite* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

Defendant Prisoners' Legal Services of New York, Inc. (hereinafter PLS) is a private not-for-profit organization funded by the State to provide, *inter alia,* civil legal services for indigent State prison inmates, to defend them in administrative disciplinary hearings and to report on conditions at State correctional facilities. In March 1987, defendant Tom Terrizzi, managing attorney at the PLS office in Tompkins County, and defendant Neil H. Golder, a legal assistant at the same office, wrote a letter to Roland Miles, Superintendent of Elmira Correctional Facility, concerning their study of prisoner complaints of unnecessary and excessive violence perpetrated by correction officers at that facility, particularly taking place at the special housing unit (hereinafter SHU). The letter made recommendations to ameliorate the problem, including the transfer from SHU or outright dismissal of "guards who use excessive or unnecessary force on inmates". Attached to the letter was a computer printout setting forth a list of the dates of some 38 violent incidents and the names of the inmate and the correction officers involved. In the first of such incidents listed, plaintiff was included as one of three identified correction officers, "plus 7—8 unknown COs". Copies of the letter and attached list were circulated to the Chief Counsel of the Department of Correctional Services, that Department's Commissioner for Facility Operations and the various complaining inmates at the Elmira facility.

Plaintiff then commenced this suit, setting forth three causes of action arising out of the circulation of the letter and list, the first two sounding in defamation and the third for intentional infliction of emotional distress. Before answering the complaint, defendants moved to dismiss the complaint for legal insufficiency (CPLR 3211 [a] [7]). They now appeal from Supreme Court's denial of their motion in its entirety.

As to plaintiff's first cause of action, defendants claim

that it is insufficient on alternate grounds. The first of these is that, reading the subject documents in their entirety, the language complained of is not reasonably susceptible to a defamatory meaning, as a matter of law. Defendants assert that, at most, the letter and attachment can only be interpreted as a report of prisoners' complaints of *alleged* guard brutality with a suggestion that, as a statistical matter, a general problem of that nature may exist at the facility and a recommendation for further investigation and preventive action by prison authorities. Defendants argue that this cannot be translated into any imputation that plaintiff, in particular, was guilty of criminal or professional misconduct in abusing prisoners. It may well be that the letter and list are subject to defendants' interpretation. However, the motion to dismiss must be denied if the communication at issue, taking the words in their ordinary meaning and in context, is also susceptible to a defamatory connotation, in which case the issue of the statement's meaning to the average reader must go to the jury *(see, Carney v Memorial Hosp. & Nursing Home,* 64 NY2d 770, 772; *Silsdorf v Levine,* 59 NY2d 8, 12-13, *cert denied* 464 US 831). In making this preliminary determination, the "courts 'will not strain' to interpret such writings 'in their mildest and most inoffensive sense to hold them nonlibelous' * * *. The words are to be construed not with the close precision expected from lawyers and judges * * *. 'The casual reader might not stop to analyze, but could readily conclude that plaintiff is a crook and let it go at that' " *(November v Time Inc.,* 13 NY2d 175, 178-179).

Applying these principles, we find that the language used in defendants' communication is susceptible to a defamatory connotation. The letter clearly implies that it was not designed merely to pass on to correction officials the complaints of inmates. The writers assert that they "attempted to gather all the relevant information [they] could", although prevented from interviewing guards or reviewing their reports. They unqualifiedly express their conviction that a "significant and serious problem" of unnecessary and excessive use of force by prison guards exists at the Elmira facility's SHU. They also flatly assert that "[b]ased upon our investigation", the implementation of their recommendations "would significantly reduce the use of unnecessary and excessive force" at the facility. The letter also points out a pattern of incidents occurring "when a single inmate is alone with several guards". The writers name several specific correction officers

particularly suspect because of the frequency of their involvement in incidents of physical violence used on inmates. Then, the attached list, unequivocally entitled "UNNECESSARY/EXCESSIVE USE OF FORCE BY GUARDS AT ELMIRA CORRECTIONAL FACILITY", not merely alleged incidents and complaints but names plaintiff as a participant in an incident involving the familiar pattern of the single inmate beset by numerous guards, in this instance, no less than 10 correction officers, among whom was one previously identified in the letter as being suspect. We think that an average reader could readily interpret the documents together as an accusation that, at the least, there was a *likelihood* that plaintiff had in fact participated in an incident in which an inmate was assaulted without justification or with excessive force. Like the defendant author's allegation in *Rinaldi v Holt, Rinehart & Winston* (42 NY2d 369, *cert denied* 434 US 969) that the plaintiff was "probably corrupt", the foregoing language could well be interpreted in a defamatory manner, i.e., as imputing to plaintiff illegal or unprofessional conduct *(see also, Carney v Memorial Hosp. & Nursing Home, supra,* at 772). Notably absent here was any language in the communication disclaiming or negating such an import *(cf., James v Gannett Co.,* 40 NY2d 415, 420-421).

Defendants' alternate ground for dismissal of plaintiff's first cause of action is that, even if defamatory, their communication is constitutionally immune as an expression of pure opinion (citing, *inter alia, Steinhilber v Alphonse,* 68 NY2d 283). This argument fails for two reasons. First, as we have already concluded, the letter and list can be read as accusing plaintiff of participating in an unjustified assault against an inmate, obviously criminal behavior *(see,* Penal Law § 120.00). Even pure expressions of opinion are not constitutionally protected if they accuse one of engaging in criminal conduct *(see, Rinaldi v Holt, Rinehart & Winston, supra,* at 382). Second, again as previously described, defendants' letter repeatedly states that the views expressed therein are based in part on the writers' own "investigation" and attempt "to gather all the relevant information". In doing so, the writers imply that their opinion is based upon facts known to them but unknown to the reader, thereby converting their assertions to "mixed opinion", which is actionable *(see, Steinhilber v Alphonse, supra,* at 289; *Chalpin v Amordian Press,* 128 AD2d 81, 85). Accordingly, plaintiff's first cause of action may not be dismissed at the pleading stage.

We reach a different conclusion with respect to plaintiff's

second and third causes of action. The second cause of action repeats and realleges each paragraph of the first cause of action, adding only averments to the effect that defendants were guilty of gross negligence in investigating and publishing the report of plaintiff's misconduct. Plaintiff concededly has pleaded this standard of culpability in an effort to bring himself within the New York rule in defamation actions by *private* persons against news media defendants arising out of communications involving subjects of legitimate public concern, requiring proof that the publisher "acted in a grossly irresponsible manner" *(Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199). This contrasts with the degree of culpability alleged in plaintiff's first cause of action, of actual malice, i.e., that defendants' utterance was made with knowledge of its falsity or with reckless disregard of its truth or falsity. However, even if the gross irresponsibility standard is applicable to a case such as this, against a nonmedia defendant, that standard is constitutionally insufficient when the complainant has been defamed in his capacity as a public official *(New York Times Co. v Sullivan,* 376 US 254). Although not everyone holding a governmental position is a public official constitutionally burdened with proving actual malice in a defamation action, one is such a public official when, *inter alia,* the position held "has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees" *(Rosenblatt v Baer,* 383 US 75, 86). Under this criterion, law enforcement officers, in defamation actions involving their conduct as such, have consistently been held to be public officials *(see, St. Amant v Thompson,* 390 US 727 [Deputy Sheriff]; *Scacchetti v Gannett Co.,* 123 AD2d 497 [police sergeant]; *Dally v Orange County Publ.,* 117 AD2d 577 [Deputy Sheriff]; *Brady v Ottaway Newspapers,* 84 AD2d 226 [police officer]; *Orr v Lynch,* 60 AD2d 949, *affd* 45 NY2d 903 [police officer]). Since plaintiff's position is indistinguishable from the officers in those cases, we similarly hold that plaintiff was a public official, requiring him to prove actual malice before he may recover in a defamation action arising out of a publication concerning performance of his official duties. This being the case, whether defendants acted in a gross and irresponsible manner is irrelevant to plaintiff's recovery, and his second cause of action should be dismissed, since apart from that allegation it merely duplicates his first cause of action.

■ Plaintiff's third cause of action, for intentional infliction of emotional distress arising out of defendants' communicating its report to the complaining inmates, must also fail. Since the letter and list discuss plaintiff in his status as a public official and involve a matter of public concern, defendants' statements about plaintiff, *if true,* were absolutely privileged under the 1st Amendment, and defendants had a totally unrestricted right to publish them *(see, Garrison v Louisiana,* 379 US 64, 73-74; *Rozanski v Fitch,* 113 AD2d 1010). If defendants' statements were false, plaintiff must nevertheless prove in his cause of action for infliction of emotional distress that the statements about him were made by defendants with knowledge of their falsity or reckless disregard as to whether they were true or not *(see, Hustler Mag. v Falwell,* 485 US 46, —, 108 S Ct 876, 882). Moreover, if in his defamation cause of action plaintiff succeeds in proving both the falsity of the statements and defendants' actual malice, he may recover damages for resultant emotional distress under that claim *(see, Rozanski v Fitch, supra).* Thus, the third cause of action also is totally duplicative of plaintiff's first cause of action. Moreover, a cause of action for intentional infliction of emotional distress should not be entertained "where the conduct complained of *falls well within* the ambit of other traditional tort liability" *(Fischer v Maloney,* 43 NY2d 553, 558 [emphasis supplied]). As just demonstrated, defendants' conduct complained of in plaintiff's third cause of action falls entirely within the scope of his more traditional tort claim for defamation. Hence, for this reason also, that cause of action should be dismissed *(see, Rozanski v Fitch, supra).*

KANE, J. P., CASEY, WEISS and MERCURE, JJ., concur.

Order modified, on the law, without costs, by reversing so much thereof as denied the motion regarding the second and third causes of action; motion granted to that extent and said causes of action are dismissed; and, as so modified, affirmed.