695 So.2d 360 (1997)
Ray STEWART, David Owens, David Bernert, David Foster, Ira Goldberg, Vance Watson and John Ferguson, Appellants,
v.
The SUN SENTINEL COMPANY, a Florida corporation, Sunbeam Television Corp., a Florida corporation, d/b/a WSVN Channel 7, Dr. Erwin Vasquez, Mary C. Williams, Ott Cefkin, Henry Templeton, Lt. Col. Ralph Bates, Jorge Hurtado, John Turchin and Barbara Walsh, Appellees.
Nos. 95-3303, 96-0102.
District Court of Appeal of Florida, Fourth District.
February 12, 1997.
*361 Howard M. Neu of Howard M. Neu, P.A., Pembroke Pines, for Appellants.
John R. Hargrove and W. Kent Brown of Heinrich, Gordon, Hargrove, Weihe & James, P.A., Fort Lauderdale, for Appellees Sun Sentinel Company, Mary C. Williams and Barbara Walsh.
Carmen M. Rodriguez and Steven J. Silverman of Whitelock, Rodriguez & Williams, P.A., Fort Lauderdale, for Appellees Templeton, Bates, Cefkin and Vasquez.
Jorge E. Hurtado, and Daniel R. Brinley of the Law Offices of Jorge E. Hurtado and Daniel R. Brinley, P.A., Fort Lauderdale, for Appellee Jorge E. Hurtado.
Allan Milledge, Gary M. Held and Dana J. McElroy of Milledge, Iden & Held, Miami, for Appellees Sunbeam Television Corporation and John Turchin.
KLEIN, Judge.
Appellants, who are plaintiffs in this defamation suit, were employed as corrections officers by the Broward County sheriff. They brought this action as a result of publicity arising out of an investigation into beatings of jail inmates by corrections officers. We consolidate their appeals and affirm the disposition of their claims by dismissal or summary judgment.
The defendant appellees include a newspaper (the Fort Lauderdale Sun Sentinel), a television station (Sunbeam Television Corp.), two newspaper reporters (Williams and Walsh), one television reporter (Turchin), three sheriff's officers who gave press releases which were quoted (Bates, Templeton, and Cefkin), a member of the sheriff's committee responsible for reviewing policy and procedure violations (Vasquez), and a lawyer representing one of the inmates on a claim (Hurtado).
Plaintiffs first argue that the lower court erred in concluding that, for purposes of defamation, they are public officials and thus can recover only if they prove actual malice under New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Defendants rely on Smith v. Russell, 456 So.2d 462 (Fla.1984), cert. denied, 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 782 (1985), in which a policeman used excessive force in making an arrest, and the defendant wrote letters complaining about the officer's conduct. The officer sued the arrestee for defamation, and the Florida Supreme Court concluded that he was a public official, quoting Rosenblatt v. Baer, 383 U.S. 75, 85-86, 86 S.Ct. 669, 675-76, 15 L.Ed.2d 597 (1966):
Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the "public official" designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.
See also St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) (deputy sheriff is public official).
Plaintiffs argue that because they work only inside correctional facilities, and do not deal with the general public, they are different from police officers. We disagree. In Smith the court characterized the patrolman as a "highly visible representative of government authority who has power over citizens and broad discretion in the exercise of that power." Id. at 464. The fact that these sheriff's deputies' powers were exercised in a correctional facility does not, in our opinion, distinguish them from police officers. Corrections officers perform a function with inmates similar to that performed by police officers with the public, and these officers also come into contact with members of the general public who find themselves in a correction facility for one reason or another. The trial court was therefore correct in considering them to be public officials. See also Sweeney v. Prisoners' Legal Servs. of New *362 York, Inc., 146 A.D.2d 1, 538 N.Y.S.2d 370 (1989) (a corrections officer is indistinguishable from a police officer, and is therefore a public official in a defamation action).
Plaintiffs next argue that the trial court erred in concluding that the newspaper and television station, and their reporters, were protected by the fair reporting privilege, which was explained in Woodard v. Sunbeam Television Corp., 616 So.2d 501, 502 (Fla. 3d DCA 1993), as follows:
The news media has been given a qualified privilege to accurately report on the information they receive from government officials. This privilege includes the broadcast of the contents "of an official document, as long as their account is reasonably accurate and fair," even if the official documents contain erroneous information. (citations omitted).
See also Ortega v. Post-Newsweek Stations, Florida, Inc., 510 So.2d 972 (Fla. 3d DCA), rev. denied, 518 So.2d 1277 (1987); Restatement (Second) of Torts § 611 (1986). Our comparison of the defamatory information with the official documents or press releases issued by the sheriff's office leads us to conclude that there are no material differences. Accordingly, the trial court was correct in disposing of these claims.
We next address the claims against the sheriff's officers who issued the statements reported in the media. Plaintiffs argue that because the official duties of these defendants do not specifically include issuing press releases, these defendants are not protected by the absolute privilege attaching to statements by public officials incidental to their official duties established in McNayr v. Kelly, 184 So.2d 428 (Fla.1966).
Plaintiffs' argument that there must be a specific duty regarding the press is without merit. McNayr only requires, in order for the absolute privilege to attach, that the publication be made "in connection with the performance of the duties and responsibilities" of the defendants' office. The duties of the sheriff's officers in the present case included administering the corrections and rehabilitation department, exercising operations and administrative control of certain bureau divisions and offices, and implementing organizational changes and review.
In Skoblow v. Ameri-Manage, Inc., 483 So.2d 809 (Fla. 3d DCA 1986), decision approved, 514 So.2d 1077 (Fla.1987), plaintiff, who had been discharged from his employment at a state hospital, sued four employees of the hospital because of statements they made about him which were reported in the news. Although only one of the four was the "spokeswoman" for the hospital (she was the community and patient relations director), all of the employees were found to have been protected by the absolute privilege:
In the present case, all the defendants alleged to have defamed the plaintiff either had official supervisory responsibility over the plaintiff or had responsibilities regarding personnel matters or community relations. Since the statements made concerning the plaintiff's discharge were related to and made within the scope of the defendants' official duties, we hold that these defendants are entitled to an absolute privilege and are, therefore, immune from liability for the alleged defamation.
Id. at 811. See also Hauser v. Urchisin, 231 So.2d 6 (Fla.1970). We conclude, under McNayr and Skoblow, that the statements made by the sheriff's officers, as well as by Dr. Vasquez, a member of the committee which investigated, were absolutely privileged.
Plaintiffs' claim against appellee Hurtado, a lawyer, arose out of Hurtado's representation of one of the injured inmates. Hurtado was required by section 768.29, Florida Statutes, to send a notice of claim to the state agencies involved, before he could file suit to recover for his client's injuries. He gave a copy of the notice of claim to a reporter who published portions of it in a newspaper. Hurtado, as the trial court correctly found, was entitled to the absolute immunity afforded statements made in the course of judicial proceedings, even though the lawsuit had not yet been filed. Ange v. State, 98 Fla. 538, 123 So. 916, 917 (1929) (the privilege extends to statements made in judicial *363 proceedings as well as those "necessarily preliminary thereto")[1].
Finally, we have not overlooked appellants' arguments that their claims should not have been determined on motions to dismiss for failure to state a cause of action or motions for summary judgment. Where the facts are not in dispute in defamation cases, however, pretrial dispositions are "especially appropriate" because of the chilling effect these cases have on freedom of speech. Karp v. Miami Herald Pub. Co., 359 So.2d 580, 581 (Fla. 3d DCA 1978) (citing Washington Post Co. v. Keogh, 365 F.2d 965 (1966), cert. denied, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967)).
Affirmed.
WARNER, J., and HAZOURI, FREDERICK A., Associate Judge, concur.
NOTES
[1] Ange was receded from, to some extent, in Fridovich v. Fridovich, 598 So.2d 65 (Fla.1992), in which it was held that there is only a qualified privilege attaching to voluntary defamatory statements made by private individuals to the police or prosecuting attorney prior to the institution of criminal charges. Thus, intentionally false and malicious defamatory statements under those circumstances are not privileged. The notice of claim filed by Hurtado in this case was not voluntary, but rather a necessary step in order to file his client's lawsuit, and has the same absolute privilege as the complaint would have.