EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

DIE FLIEDERMAUS, L.L.C.,
et al., Defendants.

Angela Boggs, et al., Plaintiffs,

v.

Die Fliedermaus, L.L.C.,
et al., Defendants.

Nos. 99 Civ. 1732(RWS),
99 Civ. 2451(RWS).

United States District Court,
S.D. New York.

Dec. 13, 1999.

**462**

Equal Employment Opportunity Commission, New York District Office, New

York City, for plaintiffs; James L. Lee, Regional Attorney, Elizabeth Grossman, Supervisory Trial Attorney, of counsel, Mason & Breitenecker, New York City; Elizabeth A. Mason, of counsel.

Ross & Hardies, New York City, for defendants Die Fliedermaus and Gerald J. Shallo; Richard A. Wilsker, Joyce E. Levowitz, of counsel.

Morvillo, Abramowitz, Grand, Iason & Silberberg, New York City, for defendant Matt Tortoso; Catherine M. Foti, Gretchan R. Ohlig, of counsel.

Patrick Kelly, Garden City, NY, defendant pro se.

Law Offices of Joel Spivak, Great Neck, NY, for defendant Simon Azoulay; Joel Spivak, of counsel.

Larry Cerrone, New York City, defendant pro se.

Conway, Farrell, Curtin & Kelly, New York City, for defendant Colin Walsh; Anthony J. McNulty, of counsel.

*OPINION*

SWEET, District Judge.

Defendants Die Fliedermaus, L.L.C. ("Die Fliedermaus"), Gerald J. Shallo ("Shallo"), Patrick Kelly ("Kelly"), Larry Cerrone ("Cerrone"), Simon Azoulay ("Azoulay"), Colin Walsh ("Walsh"), and Matt Tortoso ("Tortoso") (collectively, the "Defendants"), have moved under Rule 12(b)(5) and (6), Fed.R.Civ.P., to dismiss the complaint of plaintiffs Angela Boggs ("Boggs"), Kimberly Hawkes ("Hawkes"), Shereece Holman ("Holman"), Staci Pollard ("Pollard"), Rhonda Roenfeldt ("Roenfeldt"), and Madilyn Wade ("Wade") (collectively, the "Individual Plaintiffs") in case No. 99 Civ. 2451 (the "Boggs Action"). Die Fliedermaus has also moved to dismiss the complaint of the Equal Employment Opportunity Commission (the "EEOC" or the "Commission") in a related case, 99 Civ. 1732 (the "EEOC Action"). The Individual Plaintiffs in the Boggs Action have now also moved to intervene in the EEOC

Action pursuant to Fed.R.Civ.P. 24(a), or, alternatively, to consolidate the two cases pursuant to Rule 42(a). For the reasons set forth below, the motions are granted in part and denied in part.

### The Parties

The Individual Plaintiffs were each employed at Le Bar Bat at various periods during 1997. Plaintiffs Hawkes, Holman, and Wade are African–American and were employed as hostesses. Plaintiffs Boggs, Pollard, and Roenfeldt, whose ethnic backgrounds are not disclosed in the complaint in the Boggs Action (the "Boggs Complaint"), were employed as cocktail waitresses.

Plaintiff EEOC is a federal agency empowered by Congress to prevent unlawful employment practices. See 42 U.S.C. § 2000e–5(a).

Defendant Le Bar Bat, Inc. ("Le Bar Bat") is a New York corporation, with its principal place of business at 309–311 West 57th Street in Manhattan. The corporation operates a restaurant, bar, and nightclub located at 311 West 57th Street. Le Bar Bat held itself out as the Individual Plaintiffs' employer.

Defendant Die Fliedermaus is a New York limited liability company with its principal place of business at 309–311 West 57th Street in Manhattan. Die Fliedermaus also held itself out as the Individual Plaintiffs' employer.[1]

Defendant Shallo is an owner, officer, employee, and agent of Le Bar Bat and Die Fliedermaus with decision-making authority.

Defendants Kelly, Cerrone, Azoulay, Tortoso, and Walsh work at Le Bar Bat in the following capacities: Kelly is the Director of Banquets, Cerrone is the General Manager, Azoulay is the Executive Chef, and Tortoso and Walsh are Banquet Assistants.

### Background and Prior Proceedings

On various dates from January 30, 1998, to June 22, 1998, the Individual Plaintiffs filed multiple charges of discrimination with the EEOC against Die Fliedermaus. After an investigation, the EEOC issued on February 17, 1999 a determination that:

> Evidence of record shows that [Die Fliedermaus d/b/a Le Bar Bat] engaged in a continuing pattern and practice of sexual and racial harassment directed at a class of female and/or African American employees resulting in constructive discharge of those employees. Evidence of record established that [Die Fliedermaus d/b/a Le Bar Bat] created and distributed fliers containing derogatory and false information about [Boggs, Hawkes, Pollard and Roenfeldt] in retaliation for their having filed charges of discrimination with the EEOC. Based on the foregoing, [the District Director] has determined that there is reasonable cause to believe that [the named plaintiffs] ... have been subject to sexual and/or racial harassment and constructive discharge.

On February 23, the EEOC sent counsel to Die Fliedermaus a letter informing it of the specific relief sought, which included sensitivity training, remedial notices, adoption of an effective harassment policy, back pay for those constructively discharged, and "compensatory damages up to $50,000 for each affected victim." A March 1 deadline was set for acceptance or "a reasonable written counterproposal." The EEOC stated in its letter, "If we have not received a reasonable written counterproposal by the appointed date, we will infer that further efforts to conciliate this matter will be futile."

Also on February 23, Kelly, Tortoso, and Walsh were arrested for having

---

1. Because Die Fliedermaus and Le Bar Bat are apparently indistinguishable entities with regard to the allegations of the Boggs Complaint and the EEOC Complaint, references herein to "Die Fliedermaus" or to "Le Bar Bat" should be construed as referring to both entities, unless otherwise noted.

unlawfully, wilfully and knowingly, used intimidation and engaged in misleading conduct toward another person with intent to influence, delay and prevent the testimony of a person in an official proceeding, to wit, KELLY, WALSH and TORTOSO publicly distributed flyers falsely labeling four persons who had named KELLY in pending discrimination claims filed with the United States Equal Employment Opportunity Commission as, among other things, suspected prostitutes, child molesters, and/or drug users.

Grossman Decl.Exh. C.

Walsh and Tortoso were also arrested for each having

[m]ade a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit [WALSH and TORTOSO] falsely told an investigator employed by the United States Attorney's Office for the Southern District of New York that [they] had no knowledge concerning the distribution of flyers falsely labeling four persons who had named KELLY in pending discrimination claims filed with the United States Equal Employment Opportunity Commission as, among other things, suspected prostitutes, child molesters, and/or drug users.

*Id.*

On February 26, Die Fliedermaus responded to EEOC's February 23 letter, agreeing in substance to the non-monetary proposals and inquiring as to the EEOC position on interim earnings relative to back pay, the amount of compensatory damages and whether or not the affected victims included others in addition to the charging parties. No counterproposal regarding monetary relief was made.

On March 3, the EEOC informed Die Fliedermaus of its determination that further conciliation efforts would be "futile or non-productive."

On March 9, the EEOC Complaint was filed against corporate defendants Die Fliedermaus and Le Bar Bat, alleging that Die Fliedermaus' managerial and other employees, including but not limited to its Owner(s), its General Manager (Cerrone), its Director of Banquets (Kelly), and its Executive Chef (Azoulay), subjected a class of female employees to a pattern or practice of frequent and pervasive sexual harassment, which included unwelcome sexual touching, sexually explicit comments, and sexual propositions. It is alleged that although female employees protested and complained about the harassment, Le Bar Bat made no efforts to prevent or eradicate the continuing behavior.

The EEOC Complaint further alleged that Defendants' managerial and other employees, including but not limited to one of its owners and its General Manager, have subjected and are currently subjecting a class of African–American employees to a pattern or practice of frequent and pervasive racial harassment, which includes unwelcome racially explicit comments. Although African–American employees protested and complained about the harassment, Die Fliedermaus made no efforts to prevent or eradicate the continuing behavior.

The EEOC further alleged that Defendants constructively discharged female and African–American employees by their failure to eliminate the sexually and racially hostile environment.

The EEOC alleged, in addition, that after six employees engaged in a protected activity, the filing of charges of discrimination with the EEOC, Defendants retaliated against at least four employees by removing and utilizing confidential information from their personnel files and distributing derogatory fliers in employees' buildings and neighborhoods. The fliers contained false, highly damaging statements about the employees, including, but not limited to, claims that the employees were prostitutes, drug dealers, and/or child molesters.

On April 2, 1999, the Individual Plaintiffs filed their complaint, alleging redress for violations of their civil rights and alleging violations of Title VII arising out of a hostile work environment, *quid pro quo* discrimination, racial discrimination as to Hawkes, Holman, and Wade, constructive discharge, retaliation, and a § 1981 violation as to Hawkes, and also alleging violations of the New York State Human Rights Law and the New York City Administrative Code, as well as state law claims for intentional infliction of emotional distress, defamation, and libel per se.

The Defendants' motions to dismiss certain of the causes of action, the motions of Tortoso and Walsh to dismiss for improper service, and the Individual Plaintiffs' motion to intervene in the EEOC Action and to consolidate the two actions, were heard and marked fully submitted on September 15, 1999.

### The Instant Motions

#### A. *Die Fliedermaus and Shallo*

Defendants Die Fliedermaus and Shallo have moved to dismiss certain claims in the Boggs Action as follows:

(1) The Title VII claims (Counts 1–5 of the Boggs Complaint) for failure to comply with the procedural requirements of Title VII by not obtaining a right to sue letter from the EEOC;

(2) Plaintiff Hawkes' § 1981 claim (Count 6) because she was an at-will employee and has failed to allege a contractual relationship with Le Bar Bat;

(3) The constructive discharge and retaliation claims under the New York State Human Rights Law ("NYSHRL") and the New York City Code (Counts 7–8) for failure to allege (a) that Defendants deliberately acted for the sole purpose of obtaining Plaintiffs' resignations, and (b) that Plaintiffs suffered any adverse employ-

ment action as a direct result of their EEOC filings;

(4) The claims for intentional infliction of emotional distress (Count 9) as duplicative of the Individual Plaintiffs' defamation claims or as time-barred;

(5) the claims for intentional infliction of emotional distress (Count 9), for defamation and libel per se (Count 10), and respondeat superior (Count 11), as vicarious liability cannot be imposed against Die Fliedermaus as a matter of law;

(6) any attempt to hold Die Fliedermaus liable for negligence in connection with the allegedly improper conduct as barred by the Worker's Compensation Law.[2]

Die Fliedermaus and Shallo have also moved to dismiss, or, in the alternative, to stay the EEOC Action on the grounds of the EEOC's failure to obey its statutory duty to conciliate prior to filing suit.

#### B. *Tortoso*

Defendant Tortoso has moved to dismiss the claims against him in the Boggs Action as follows:

(1) the NYSHRL claims (Count 7) on the grounds that (a) Plaintiffs cannot allege claims of retaliation or aiding and abetting under this statute, and (b) the current state of New York law on liability;

(2) the New York City Code claims (Count 8) for failure to allege a claim and to meet the statutory prerequisites for bringing a claim;

(3) all claims, for failure to effect service of process.

Tortoso also joins point (4) of the Die Fliedermaus/Shallo motion.

#### C. *Walsh*

Defendant Walsh moves to dismiss all claims against him in the Boggs Action for: (1) failure to effect service of process; and (2) failure to state a claim.

---

**2.** The Boggs Complaint does not, however, state claims against Die Fliedermaus sounding in negligence; therefore the Court de-

clines to rule on this aspect of Die Fliedermaus' motion at this time.

## D. *Kelly, Cerrone, and Azoulay*

Defendants Kelly, Cerrone, and Azoulay move to dismiss Counts 7 & 8, in part, relying on point (3) of the Die Fliedermaus/Shallo motion. Kelly also moves to dismiss Count 9 in full, relying on point (4) in the Die Fliedermaus/Shallo motion.

## E. *The Individual Plaintiffs*

The Individual Plaintiffs move to intervene in the EEOC Action or to consolidate the two actions.

## *Discussion*

### I. *The Actions Are Consolidated*

■ Rule 42(a), Fed.R.Civ.P., provides that "[w]hen actions involving a common question of law or fact are pending before the court, it may order ... all the actions consolidated." A district court has broad discretion to consolidate actions. *See Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1006 (2d Cir.1995), *vacated on other grounds sub nom., Consorti v. Owens–Corning Fiberglas Corp.*, 518 U.S. 1031, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996); *International Paving Sys., Inc. v. Van–Tulco, Inc.*, 806 F.Supp. 17, 22 (E.D.N.Y.1992). While the "discretion to consolidate is not unfettered" and "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial," *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir. 1990), so long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate. *See International Paving*, 806 F.Supp. at 22.

■ The EEOC Action and the Boggs Action involve the same relationship between the Individual Plaintiffs and the Defendants, the same incidents, and by and large the same legal theories. The only divergence between the two actions is the addition of state claims in the Boggs Action. Under these circumstances, consolidation is appropriate.

In view of the interdependent aspect of the resolution of these motions now pending, the actions will be treated by the Court *sua sponte* as consolidated for the disposition of the motions, and an order of consolidation will be entered upon this opinion.

## II. *Jurisdiction Exists Over the EEOC Claims But Conciliation Is Required*

■ Die Fliedermaus has moved to dismiss the EEOC Action, or, in the alternative, to stay all proceedings pending an order by this Court to attempt conciliation.

Pursuant to its statutory mandate, "If the Commission determines after ... investigation that there is reasonable cause to believe that [a] charge [of an unlawful employment practice brought by an aggrieved person] is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5(b). This Court has stated that

> [t]he E.E.O.C.'s duty to attempt conciliation is fulfilled if it (1) outlines to the employer the reasonable cause for its belief that the employer is in violation of the Act, (2) offers an opportunity for voluntary compliance, and (3) responds in a reasonable and flexible manner to the reasonable attitude of the employer.

*EEOC v. Colgate–Palmolive Co.*, No. 81 Civ. 8145(RWS), 1983 WL 621, at *5 (S.D.N.Y.1983) (*citing Marshall v. Sun Oil Co. (Delaware)*, 605 F.2d 1331, 1335–36 (5th Cir.1979); *EEOC v. Klingler Elec. Corp.*, 636 F.2d 104, 107 (5th Cir.1981)). This three-step test has been adopted by the Second Circuit. *See EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1534 (2d Cir.1996).

"If the defendant refuses the invitation to conciliate or responds by denying the EEOC's allegations, the EEOC need not pursue conciliation and may proceed to litigate the question of the employer's liability for the alleged violations." *Johnson*

*& Higgins,* 91 F.3d at 1535. On the other hand,

> if the EEOC is found not to have fulfilled its statutory duty to conciliate, the preferred remedy is not dismissal but instead a stay of the action to permit such conciliation. Where the EEOC has made absolutely no efforts dismissal is appropriate, but where conciliation efforts have been abbreviated, the case should be stayed to allow sufficient time for the parties to engage in more serious conciliation discussions.

*EEOC v. New Cherokee Corp.,* 829 F.Supp. 73, 81 (S.D.N.Y.1993).

The "determination" letter of February 17, 1999, outlining the EEOC's reasonable cause for believing that Die Fliedermaus had violated Title VII, constitutes the first step listed in *Colgate–Palmolive.* The EEOC's letter of February 23, 1999, which offers an opportunity for voluntary compliance, constitutes the second step. The February 23 letter outlined five conciliation terms: (1) sensitivity training; (2) posting of remedial notices; (3) adoption of an effective harassment policy; (4) back pay plus interest for affected individuals who were constructively discharged; and (5) compensatory damages up to $50,000 for each affected victim, including but not limited to the charging parties.

However, the EEOC did not take the third step. On February 26, 1999, counsel to Die Fliedermaus sent the EEOC a letter responding to the February 23 conciliation proposal. Die Fliedermaus agreed "that items 1, 2, and 3 of the Commission's proposal are appropriate to the conciliation of this matter, and we expect that together we can work out the logistics of implementing those items. Please be aware that with regard to item 3, Le Bar Bat already has a harassment policy in place." With regard to conciliation terms 4 and 5, the letter stated:

We require further information ... before we can respond ... [such as] whether the Commission is aware of the Charging Parties' interim earnings and whether it intends to deduct those interim earnings from its backpay calculations, [and] the amount of compensatory damages the Commission is seeking for each charging party. Further, it is unclear whether the Commission is seeking damages for individuals other than the charging parties. For example, in item 4 what does the Commission mean by "for affected individuals who were constructively discharged"? Similarly, in item 5, what does the Commission mean by "for each affected victim, including but not limited to Charging Parties?"

Grossman Decl.Exh. D.

The EEOC responded to Die Fliedermaus by letter of March 3, 1999, stating that it had "determined that efforts to conciliate ... have been unsuccessful." On March 9, 1999, it filed the instant EEOC Action.

The facts demonstrate that the EEOC did not "respond [ ] in a reasonable and flexible manner to the reasonable attitude of the employer." *Colgate–Palmolive,* 1983 WL 621, at *5. Die Fliedermaus's February 26 letter evinced a reasonable attitude: it agreed to the first three terms of the EEOC's February 23 letter and requested more specifics on terms 4 and 5. Obviously, the EEOC's determination that conciliation efforts were unsuccessful, and the filing of the EEOC Action, do not indicate a "reasonable and flexible manner" of responding to the February 26 letter. Contrary to the EEOC's exhortations in its papers opposing this motion, nothing in the record before the Court supports the notion that Die Fliedermaus had no intention to engage in good faith attempts at conciliation.[3]

---

3. In its memorandum of law in opposition to this motion, the EEOC gives an indication of where it went astray. It cites *Johnson & Higgins* for the proposition that "the EEOC adequately conciliates by (1) informing the respondent of the nature and extent of the violations, (2) explaining the relief sought, and (3) giving an opportunity to respond."

As indicated above, the "preferred remedy" for a failure to conciliate "is not dismissal but instead a stay of the action to permit such conciliation." *New Cherokee,* 829 F.Supp. at 81. Since it is not the case here that "the EEOC has made absolutely no efforts" to conciliate, dismissal is not warranted. *Id.*

This action is in its initial stages and all proceedings will be stayed for thirty days to permit the parties to resolve a class definition and the dollar amount of a global settlement. On this condition, the motion to dismiss the EEOC complaint for failure to conciliate is denied.

### III. *Jurisdiction Exists Over The Individual Plaintiffs' Title VII Claims*

■ The Individual Plaintiffs did not receive a right to sue letter from the EEOC. According to Defendants, this constitutes a jurisdictional defect mandating dismissal of Claims 1–5 (the Title VII claims) in the Boggs Action.

The preconditions to filing suit are set forth in the statute as follows:

> If ... within one hundred and eighty days from the filing of [a] charge[,] ... the Commission has not filed a civil action under this section or ... entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved....

42 U.S.C. § 2000e–5(f)(1). The "notice" in the statutory language is commonly referred to as the "right to sue letter."

The most recent of the Individual Plaintiffs' charges was filed on June 22, 1998. On or about March 3, 1999, the EEOC informed the Individual Plaintiffs' counsel that the EEOC had elected to file suit against Die Fliedermaus and Le Bar Bat. The Individual Plaintiffs, therefore, were not issued a right to sue letter.

The Individual Plaintiffs maintain, first, that because their Complaint alleges (1) jurisdiction under 42 U.S.C. § 2000e–5(f)(3), and 28 U.S.C. §§ 1331 & 1343, and (2) the performance of all required conditions precedent to suit, Defendants cannot demonstrate that the Court lacks subject matter jurisdiction, because on a motion to dismiss the Court cannot look beyond the pleadings. However, while in considering a motion to dismiss for lack of subject matter jurisdiction, all material factual allegations in the complaint must be accepted as true, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992), the court must examine the substance of the allegations and any other evidence before it in resolving the jurisdictional dispute. *See Cargill Int'l, S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012, 1019 (2d Cir.1993); *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986). Moreover, the Court will not draw inferences favorable to the party asserting jurisdiction. *See Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925) ("[T]he jurisdiction of a federal court must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings."); *Atlantic Mutual,* 968 F.2d at 198. Defendants here have raised a legitimate question regarding subject matter jurisdiction, which cannot be dispensed with by the allegation in the Boggs Complaint that jurisdiction is proper.

(EEOC Memo. in Opp., at 6.) However, the *actual* language in Johnson & Higgins is *precisely* the 3–step *Colgate–Palmolive* inquiry quoted in the text, *supra. See Johnson & Higgins,* 91 F.3d at 1534. If the EEOC interprets its duty to "respond[ ] in a reasonable

and flexible manner to the reasonable attitude of the employer," *id.,* to mean "giv[e the employer] an opportunity to respond," little wonder it felt it could proceed with a suit after receiving Die Fliedermaus's February 26 letter.

Next, Plaintiffs maintain that because the EEOC did not take action within 180 days of the last filed charge, the right to sue is conferred upon Plaintiffs. Strictly speaking, of course, this is not correct. The statute calls for an intervening step. "The prerequisites for a suit under Title VII include a timely filed administrative charge and timely institution of the suit *after receipt of* a right-to-sue notice." *Criales v. American Airlines, Inc.*, 105 F.3d 93, 95 (2d Cir.1997) (emphasis added) (*citing* 42 U.S.C. § 2000e–5(e)(1) (timely charge) & (f)(1) (right-to-sue notice)); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973).

However, where the EEOC has elected to bring suit, plaintiffs have the statutory right to intervene. *See* Fed.R.Civ.P. 24(a); 42 U.S.C. § 2000e–5(f)(1). Under such circumstances, receipt of a right to sue letter is not a jurisdictional prerequisite. *See id.; see also General Tel. Co. v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Thus, an "aggrieved person" may intervene in an enforcement action brought under Title VII by the EEOC. *See EEOC v. Service Systems Corp.*, No. CIV–83–766, 1983 WL 576, at *1 (W.D.N.Y. Aug.5, 1983) ("It is well-established that an 'aggrieved person' may intervene in an enforcement action brought under [§ 2000e–5] by the EEOC"). Title VII does not foreclose an individual claim simply because the action was instituted by the EEOC. Rather, "the EEOC's civil suit [is] intended to supplement, not replace, the private action." *General Tel.*, 446 U.S. at 326, 100 S.Ct. 1698. The EEOC represents not only the public interest, but also "acts ... at the behest of and for the benefit of specific individuals." *Id.*

The Individual Plaintiffs' motion to intervene in the EEOC action is hereby granted. Claims 1–5 of the Boggs Action (the Individual Plaintiffs' Title VII Claims) are thus preserved within the EEOC Action, though not within the Boggs Action.

## IV. *The § 1981 Claim of Hawkes Is Allowed*

■ The Sixth Claim of the Individual Plaintiffs' Complaint stems from Le Bar Bat's alleged policy of not permitting "color on the floor" (Compl.¶ 249), i.e., its refusal to train or hire African–Americans as cocktail waitresses. Hawkes, an African–American who was employed as a hostess at Le Bar Bat, unsuccessfully sought a position as a cocktail waitress. The claim is predicated on 42 U.S.C. § 1981(a), which states, in pertinent part: "All persons ... shall have the same right ... to make and enforce contracts...."

To establish a § 1981 claim, a plaintiff must establish: (1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one of the activities enumerated in § 1981. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993). As applied to this case, § 1981 requires evidence of intentional discrimination that has interfered with a contractual relationship. *See Murray v. National Broad. Co.*, 844 F.2d 988, 995 (2d Cir.1988) (*citing Krulik v. Board of Educ.*, 781 F.2d 15, 23 (2d Cir.1986)).

This Circuit has not ruled on the question of whether, in light of Congress's 1991 amendment to § 1983, *see* Civil Rights Act of 1991, Pub.L. No. 102–166, § 101, an at-will employee, such as Hawkes, lacks the type of contractual relationship with her employer necessary to assert a § 1981 claim. District courts are divided on the issue.[4] The question is currently pending

---

**4.** Cases holding that no contractual claim is cognizable under § 1981 include *Bascomb v. Smith Barney, Inc.*, No. 96 Civ. 8747(LAP), 1999 WL 20853, at *4 (S.D.N.Y. Jan.15,

1999); *Brown v. Sara Lee Corp.*, No. 98 Civ. 1593(JSR), 1998 WL 809518, at * 3 (S.D.N.Y. Nov.19, 1998); *Simpson v. Vacco*, No. 96 Civ. 3916(JFK), 1998 WL 118155, at *8 (S.D.N.Y.

before the Second Circuit. *See Lauture v. IBM*, 98 Civ. 4882 (S.D.N.Y. May 25, 1999), appeal docketed, 99–7732 (2d Cir. Jun. 21, 1999). The Fourth Circuit and Fifth Circuit have recently decided that at-will employees can assert § 1981 claims. *See Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir.1999); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1052 (5th Cir.1998). The Seventh Circuit avoided deciding the issue in *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998).

Of the numerous decisions cited, this Court finds the reasoning of the Fifth Circuit most compelling:

> None can contest that discriminating against an employee on the basis of race is illegal and against public policy. In amending § 1981, Congress was advancing such public policy concerns by providing a vehicle for every employee to remedy racial discrimination in the workplace. Congress could not have meant to exclude at-will workers from the reach of § 1981, as to do so would be to allow use of the ubiquitous at-will doctrine as leverage to incite violations of our state and federal laws.

*Fadeyi*, 160 F.3d at 1052 (internal quotations omitted). In the absence of controlling authority from this Circuit, the *Fadeyi* holding is adopted here.

Therefore, Hawkes' § 1981 claim will not be dismissed.

### V. *The Constructive Discharge Claims Are Dismissed*

■ The Individual Plaintiffs have alleged in considerable detail the sexual harassment and racial discrimination committed by the Defendants. Plaintiffs have also alleged that these conditions led to the constructive discharge of Plaintiffs. Defendants contend, however, that Plaintiffs have not pled the requisite intent to discharge of the employer, Die Fliedermaus.

"Constructive discharge of an employee occurs when the employer intentionally creates a work environment that is so intolerable that the employee is, in effect, forced to quit involuntarily." *Parker v. Chrysler Corp.*, 111 F.3d 123 (2d Cir.1997) (*citing Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir.1996)) (affirming dismissal of plaintiff's constructive discharge claim because allegations regarding work environment "fall[ ] far short of demonstrating that unbearable working conditions were deliberately created to force him to quit"); *see also Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987) (a "constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation") (internal quotation marks omitted).

Plaintiffs have met their burden to plead a sufficiently intolerable working environment. At issue here is the requirement to plead deliberateness in some form on the part of the employer. *See Watts v. New York City Police Dep't*, 724 F.Supp. 99, 109 (S.D.N.Y.1989); *see also Babcock v. Frank*, 783 F.Supp. 800, 810 (S.D.N.Y. 1992) ("A plaintiff must prove that her employer deliberately acted or refrained from acting, rendering her working conditions so intolerable as to force her resignation"). "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit." *Rivera v. Prudential Ins. Co.*, No. 95–CV–0829, 1996 WL

Mar.17, 1998); *Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665, 675 (E.D.N.Y.1997), *aff'd*, 162 F.3d 1148 (2d Cir.1998); *Moscowitz v. Brown*, 850 F.Supp. 1185, 1192 (S.D.N.Y. 1994). Cases holding that such a claim is cognizable include *Dew v. Health Insurance Plan of Greater New York*, No. 97 Civ.

7006(ILG), 1999 WL 684158, at *4, (E.D.N.Y. July 15, 1999); *Lazaro v. Good Samaritan Hosp.*, 54 F.Supp.2d 180, 184–85 (S.D.N.Y. 1999); *Curtis v. DiMaio*, 46 F.Supp.2d 206, 211 (E.D.N.Y.1999); *Harris v. New York Times*, No. 90 Civ. 5235(CSH), 1993 WL 42773, at *4 (S.D.N.Y. Feb.11, 1993).

637555, at *14 (N.D.N.Y. Oct.21, 1996) (*quoting Lombardo v. Oppenheimer,* 701 F.Supp. 29, 30 (D.Conn.1987)). Accordingly, in assessing the viability of a constructive discharge claim, the court has to examine the defendants' motives as well as the plaintiffs' working conditions. *Watts,* 724 F.Supp. at 109 n. 8 (Second Circuit requires inquiry into motive of employer).

The Boggs Complaint does not allege any intent or act on the part of Defendants threatening termination, demotion, or a change in job status. Where a constructive discharge has been found, the employer has made clear and unequivocal remarks to the employee. *See Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 361 (2d Cir.1993) (no constructive discharge as employer "never either expressly or implicitly suggested that [plaintiff's] employment would be terminated"); *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325–26 (2d Cir.1983) (finding no constructive discharge when employer asked plaintiff to stay); *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 160 (2d Cir.1997) (jury finding of constructive discharge upheld on evidence that employer nodded when plaintiff suggested that the company was trying to force her to leave); *S.B. Thomas,* 831 F.2d at 1189 (2d Cir.1987) (constructive discharge when employee told he would be fired at end of 90–day period no matter what); *Chertkova,* 92 F.3d at 88 (threat of immediate termination).

The claims based on constructive discharge are therefore dismissed.

## VI. *The Retaliation Claims Are Actionable*

■ Under the relatively settled law of this Circuit, to establish a *prima facie* case of retaliation under Title VII a plaintiff must demonstrate (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See, e.g., Kotch-*

*er v. Rosa and Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 64 (2d Cir.1992).

■ Plaintiffs' filing of a charge with the EEOC, of which Le Bar Bat was unquestionably aware, constitutes a protected activity under prong (1) of the inquiry. Defendants maintain, however, that Plaintiffs have not alleged any employment action in which they have been disadvantaged that is causally connected to their filing of the EEOC charges. Plaintiffs counter that the nexus between a protected activity, an adverse employment action, and retaliation should not be necessary: since the primary purpose of the antiretaliation provisions in Title VII is to alleviate the fears of persons with legitimate grievances who might refrain from filing claims on the basis of possible retaliation, it should make no difference whether the retaliatory action involves an adverse employment action. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("[A] primary purpose of [Title VII's] antiretaliation provisions" is "[m]aintaining unfettered access to statutory remedial mechanisms.").

While it is true that this Circuit had never held that retaliation unrelated to an adverse employment action is actionable under Title VII, the cases so holding were decided prior to *Robinson,* which affirms a broader rationale behind the antiretaliation provisions.

In holding that retaliatory actions not resulting in adverse employment consequences are not actionable under Title VII, courts have reasoned that " '[t]he objective of Congress in the enactment of Title VII ... was to achieve equality of employment opportunities....' " *Nelson v. Upsala College,* 51 F.3d 383, 387 (3d Cir.1995) (*quoting Griggs v. Duke Power Co.,* 401 U.S. 424, 429, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971)). Yet, as the *Nelson* court itself acknowledged:

> Our reading of [Title VII] does mean that a former employee will be without a remedy for an employer's significant wrongful post-employment conduct not

touching an employment relationship. For instance, if an employer physically assaults a former employee or burns down her house in retaliation for the employee having brought a Title VII charge, relief might not be available under section 704. However, in such cases the former employee could assert a state-law damage claim. In fact, [plaintiff's] defamation claims are an example of a former employee seeking relief in a common law action for conduct which the employee herself characterizes as retaliatory. Thus, if [defendant] really defamed her she does not need a section 704(a) retaliation action to obtain relief.

*Nelson,* 51 F.3d at 388.

While it is true that Plaintiffs here, as in *Nelson,* are asserting defamation claims arising from the same conduct as the retaliation claims, the *Nelson* reasoning appears to have been superseded by the reasoning in *Robinson,* 519 U.S. at 346, 117 S.Ct. 843. *Robinson* did involve an adverse employment action—the former employer gave the former employee, who had filed a charge with the EEOC, a negative recommendation for a prospective employer—and thus *Robinson* does not squarely fit within the facts of the instant case.

Nonetheless, fear of any type of retaliation can deter an aggrieved person from filing an EEOC charge, and since the charge must, *a fortiori,* relate to equality of employment opportunities, to say that retaliation not resulting in an adverse employment action is therefore unrelated to employment conditions does not necessarily follow. Moreover, contrary to the reasoning of the *Nelson* court, there may be circumstances where retaliation not related to an adverse employment action is *not* actionable under a separate legal theory. While it could be possible to fashion a rule permitting a retaliation claim to lie if the

violative conduct is not otherwise actionable, this would impose the unnecessary burden on courts and litigants of determining whether a given instance of non-employment related retaliation was otherwise actionable. The more logical rule is to allow the retaliation claim to be actionable if the retaliation is sufficiently alleged to flow from the filing of the EEOC charge.

This being said, it is also the case that Defendants' public distribution of flyers could affect Plaintiffs' ability to find jobs. Admittedly, the likelihood is not necessarily great, but it is sufficient to survive the pleading stage.

## VII. *The Intentional Infliction Claims Are Dismissed*

■ Under New York law, "intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort" and such a claim is therefore "precluded where the offending conduct is embraced by a traditional tort remedy." *McIntyre v. Manhattan Ford, Lincoln–Mercury, Inc.,* 256 A.D.2d 269, 682 N.Y.S.2d 167 169 (1st Dep't 1998) (*citing Fischer v. Maloney,* 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978); *Sweeney v. Prisoners' Legal Services of New York,* 146 A.D.2d 1, 538 N.Y.S.2d 370, 374 (3d Dep't 1989)). Accordingly, the New York courts have dismissed intentional infliction of emotional distress ("IIED") claims where the plaintiffs have also asserted a defamation claim arising from the same conduct. *See, e.g., Dec v. Auburn Enlarged Sch. Dist.,* 249 A.D.2d 907, 672 N.Y.S.2d 591, 593 (4th Dep't 1998); *Herlihy v. Metropolitan Museum of Art,* 214 A.D.2d 250, 633 N.Y.S.2d 106, 114 (1st Dep't 1995); *Sweeney,* 146 A.D.2d 1, 538 N.Y.S.2d 370.[5]

---

5. These holdings are not inconsistent with the result reached in the previous section of this Opinion. A retaliation claim is not a "last resort" remedy like IIED, and therefore the reason why courts do not generally permit

IIED claims to be asserted for the same conduct giving rise to a defamation claim is not applicable when a plaintiff raises a retaliation claim and a defamation claim from the same underlying conduct.

In *Anyanwu v. Columbia Broadcasting System, Inc.,* 887 F.Supp. 690, 693 (S.D.N.Y.1995), this Court rejected a similar effort to assert an IIED claim arising from the same conduct upon which a libel claim was based, holding that "[w]hen additional tort claims are aimed at controlling the same speech that is the basis of a libel claim, courts should not entertain the additional claims under less stringent standards. New York cases have held that a separate cause of action for what are essentially defamation claims should not be entertained." *Id.* at 693–94 (citations omitted).

■ Two components of the IIED claim—a telephone call purportedly made to Roenfeldt in February 1998 and statements purportedly made to Boggs in March 1998 at the China Club—do not fall within the ambit of Plaintiffs' defamation cause of action. These aspects of the claim are barred by New York's one-year statute of limitations, the complaint having been filed on April 3, 1999, more than one year since the acts were committed. *See* N.Y.C.P.L.R. § 215(3); *Burrell v. City University of New York,* 995 F.Supp. 398, 415–16 (S.D.N.Y.1998); *Mariani v. Consolidated Edison Co.,* 982 F.Supp. 267, 273 (S.D.N.Y.1997); *Mitchell v. FAB Indus. Inc.,* No. 96 Civ. 0095(RWS), 1996 WL 417522 (S.D.N.Y. July 25, 1996).

■ The allegations in the Boggs Complaint of activities not barred by the statute of limitations all appear to be defamatory in nature and as such the IIED claims are dismissed. If, as the Individual Plaintiffs now claim, there are statements or acts giving rise to an IIED claim outside the contours of a libel or defamation claim, those matters should be properly pleaded.

## VIII. *Die Fliedermaus' Vicarious Liability for Intentional Tort Has Been Properly Pleaded*

■ An employer cannot be held vicariously liable for the acts of its employees unless those acts were committed while the employees were performing their duties for the express benefit of the employer. *Ross v. Mitsui Fudosan, Inc.,* 2 F.Supp.2d 522, 531 (S.D.N.Y.1998); *see also H & H Int'l Corp. v. J. Pellechia Trucking, Inc.,* 119 F.R.D. 352, 353 (S.D.N.Y.1988). Actions that are undertaken for personal motives and not in furtherance of the employer's business do not give rise to employer liability. *See, e.g., Tomka v. Seiler Corp.,* 66 F.3d 1295, 1318 (2d Cir.1995).

■ On the other hand, an employer may be liable for false statements maliciously published by its employees in the course of employment. *See Loughry v. Lincoln First Bank,* 67 N.Y.2d 369, 494 N.E.2d 70, 502 N.Y.S.2d 965 (1986). The *Loughry* court also held that punitive damages for the same acts can be assessed against the employer in the presence of its complicity, stating that punitive damages can be imposed on an employer for the intentional wrongdoing of its employees where management has authorized, participated in, consented to, or ratified the conduct giving rise to such damages or deliberately retained the unfit servant. *Id.* at 373, 502 N.Y.S.2d 965, 494 N.E.2d 70.

■ Moreover, the determination of whether a particular act was within the scope of the servant's employment is heavily dependent on factual considerations, and therefore the question is ordinarily one for the jury. *See Riviello v. Waldron,* 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979). An employer can also be held liable for an employee's discriminatory act if the employer became a party to it "by encouraging, condoning, or approving it." *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.,* 65 N.Y.2d 300, 305, 491 N.Y.S.2d 293, 480 N.E.2d 1075 (1985).

■ The Boggs Complaint is replete with allegations that the behavior of defendants Shallo, Cerrone, Kelly, and Azoulay at Le Bar Bat was encouraged, condoned, or approved, since it is alleged that each of

these defendants held a managerial or ownership position with Le Bar Bat. Likewise, Kelly's managerial position as Director of Banquets suffices at the pleading stage to impute vicarious liability to Die Fliedermaus for the distribution of the flyers.

Thus, the motion to dismiss the Individual Plaintiffs' claims for damages based upon the vicarious liability of Die Fliedermaus for the intentional torts of its employees is denied.

### IX. Jurisdiction Over the State and City Human Rights Claims Against Walsh and Tortoso is Declined

■■ Walsh and Tortoso have moved for dismissal of the seventh and eighth causes of action in the Boggs Complaint, which allege violations of § 296(1)(a) of the NYSHRL and §§ 8–107(1)(a), 8–107(1)(c), 8–107(19), and 8–107(13)(b)(1–3) of the Administrative Code of New York City. Walsh and Tortoso have urged the Court to decline to exercise jurisdiction over these claims because of the conflict in the New York State courts over the question of whether or not an ownership interest in the employer is a requirement of the cause of action.[6]

This same issue was raised in *Ponticelli v. Zurich American Insurance Group,* 16 F.Supp.2d 414 (S.D.N.Y.1998), where this Court declined jurisdiction because of the same unsettled state law question. *See id.* at 439–40. The Plaintiffs have not established any basis for concluding that *Ponticelli* should not be followed in this instance.

Jurisdiction over these claims against Walsh and Tortoso will therefore be declined.[7]

### X. Failure to File Is Not a Jurisdictional Prerequisite

The Defendants have urged § 8–502(c) of the City's Administrative Code as a bar to the action, the Plaintiffs having concededly not filed their claim with the City Human Rights Commission or the Corporation Counsel. However, for the reasons set forth in *Klein v. London Star Ltd.,* 26 F.Supp.2d 689, 696 (S.D.N.Y.1998), the failure to file will not serve as a bar.

### XI. The Motions to Dismiss for Improper Service Are Denied

■■ Tortoso and Walsh maintain that proper service was never effected on either of them, thereby mandating dismissal of all claims against them.

The Federal Rules provide that service upon an individual may be effected: "(1) pursuant to the law of the state in which the district court is located ... or (2) ... by leaving copies [of the summons and complaint] at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein...." Fed.R.Civ.P. 4(e). Under New York law, service upon an individual may be effected through delivery of the summons to "a person of suitable age and discretion" at the individual's "dwelling or usual place of abode" and by mailing the summons by first class mail to the individual's last known address. N.Y.C.P.L.R. § 308(2) (McKinney 1999).

The parties have engaged in lengthy contentions regarding whether the various attempts of the Individual Plaintiffs to serve Tortoso and Walsh constituted effective service. Affidavits have been supplied

---

6. The other, individual defendants, Shallo, Kelly, Cerrone, and Azoulay are alleged to be "employers" within the meaning of § 296(1)(a) and § 8–107(1)(a).

7. Walsh has also asserted that the defamation claim against him should be dropped because he was a mere distributor, and Plaintiffs will

not be able to demonstrate that he knew of the defamatory nature of the flyers. Tortoso has joined this aspect of Walsh's motion. The Court has considered the claim and has decided that it has no merit. Thus, the defamation claims against Walsh and Tortoso will stand.

by both parties which create factual questions not capable of easy resolution.

It is unnecessary, however, to engage in a protracted discussion of whether the evidence supplied by the Individual Plaintiffs is sufficient under the statutes and the case law to effect valid service. Under Rule 4(m),

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). "In determining whether a plaintiff has shown good cause under Rule 4(m), courts in this Circuit generally consider whether (1) the plaintiff made reasonable efforts to serve the defendant, and (2) the defendant was prejudiced by the delay in service." *Shider v. Communications Workers of America,* No. 95 Civ. 4908(SS), 1999 WL 673345, at *2 (S.D.N.Y. Aug. 30, 1999).

There is no doubt that the Individual Plaintiffs made "reasonable efforts" to serve Tortoso and Walsh, by engaging process servers to deliver copies of the summons and complaint in the Boggs Action to addresses reasonably believed to be current, as well as to the residences of Tortoso's and Walsh's parents. Nor have Tortoso and Walsh demonstrated any prejudice. Both have retained counsel who filed the instant motions long before the 120 day time-limit for service had expired. Under these circumstances, dismissal for lack of service is not warranted. Rather, to insure that service is perfected, the Court directs that the Individual Plaintiffs serve Walsh and Tortoso within thirty days from the date of the opinion by personally serving a copy of the summons and complaint on their counsel.

*Conclusion*

Walsh and Tortoso may be served as set forth.

The actions are consolidated and an order of consolidation will be submitted upon notice within ten (10) days.

The action will be stayed after consolidation for twenty (20) days to permit conciliation.

The causes of action for constructive discharge and IIED are dismissed.

Jurisdiction is declined over the NYSDHR and City Code claims against Tortoso and Walsh.

Leave is granted to submit a consolidated complaint within fifty (50) days.

The remaining claims stand.

It is so ordered.